# United States Court of Appeals for the Federal Circuit

---

**MATTHEWS INTERNATIONAL CORPORATION,**
*Plaintiff-Appellant,*

v.

**BIOSAFE ENGINEERING, LLC AND DIGESTOR, LLC,**
*Defendants-Appellees.*

---

2012-1044

---

Appeal from the United States District Court for the Western District of Pennsylvania in case no. 11-CV-0269, Judge Nora Barry Fischer.

---

Decided: September 25, 2012

---

KEVIN P. ALLEN, Thorp, Reed & Armstrong, LLP, of Pittsburgh, Pennsylvania, argued for plaintiff-appellant. With him on the brief was DAVID W. ENGSTROM. Of counsel on the brief was JOHN W. MCILVAINE, III, The Webb Law Firm, Pittsburgh, Pennsylvania.

SPIRO BEREVESKOS, Woodard, Emhardt, Moriarty McNett & Henry, LLP, of Indianapolis, Indiana, argued for defendants-appellees.

---

Before RADER, *Chief Circuit Judge*, MAYER and SCHALL, *Circuit Judges*.

MAYER, *Circuit Judge*.

Matthews International Corporation ("Matthews") appeals from the final order of the United States District Court for the Western District of Pennsylvania dismissing its claims for declaratory and injunctive relief. *See Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, No. 11-CV–0269, 2011 WL 4498935 (W.D. Pa. Sept. 27, 2011) ("*District Court Decision*"). Because we conclude that the district court correctly determined that Matthews' claims lacked sufficient immediacy and reality to support the exercise of declaratory judgment jurisdiction, we affirm.

## I. BACKGROUND

Matthews is a leader in the "death care" industry. It manufactures cremation equipment, caskets, and bronze memorials and sells them to funeral homes. Matthews is currently marketing a Bio Cremation™ product, which uses an alkaline hydrolysis[1] process, rather than incineration, to cremate human remains. According to Matthews, the Bio Cremation™ equipment offers an "environmentally friendly" alternative to traditional flame-based cremation.

Resomation Ltd. ("Resomation") is a Scottish company that manufactures and licenses equipment that employs an alkaline hydrolysis process to dispose of human remains. Resomation has granted Matthews an exclusive license to market and sell its alkaline hydrolysis equipment in the United States.

---

[1] The term "alkaline hydrolysis" generally refers to a method of subjecting materials to sodium or potassium hydroxide and heat, thereby allowing such materials to be disposed of in a safer and more efficient manner.

In 2007, Biosafe Engineering, LLC and Digestor, LLC (collectively "Biosafe") were formed to operate the business acquired from a bankrupt company, Waste Reduction by Waste Reduction, Inc. ("WR2"), and to hold the patents acquired from WR2. Biosafe ultimately acquired several patents related to the application of alkaline hydrolysis to the disposal of various types of waste, such as medical waste, infectious agents, and hazardous materials. These patents include five method patents, U.S. Patent Nos. 5,332,532, 6,437,211, 6,472,580, 7,183,453, and 7,829,755 (collectively the "Method Patents"), and one system patent, U.S. Patent No. 7,910,788 (the "System Patent").

On February 28, 2011, Matthews filed suit against Biosafe, seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the Method Patents. Matthews also asserted state-law claims of trade libel, defamation, and tortious interference with contractual relations. On March 22, 2011, the System Patent issued. On May 13, 2011, Matthews filed an amended complaint, which included a request that the System Patent be declared invalid and unenforceable. At the time it filed its amended complaint, Matthews had sold three Bio Cremation™ units, but none of these units had been installed in customers' facilities.

In its amended complaint, Matthews alleged that Biosafe had "wrongly accused Matthews of patent infringement, and ha[d] made false accusations about Matthews to [Matthews'] customers, potential customers, and employees." Matthews asserted that during a December 2008 telephone conversation, Biosafe's president, Bradley Crain, told Steven Schaal, an official at Matthews' cremation division, "that [Matthews'] sale of Resomation/Bio Cremation™ equipment would infringe [Biosafe's] alleged intellectual property rights." Matthews' attorney thereafter sent Biosafe a letter, dated December 31, 2008, re-

questing that Biosafe "detail [its] concerns in writing" regarding possible patent infringement by Matthews' cremation products.

Biosafe's counsel responded by letter dated February 2, 2009. This letter raised possible false advertising and copyright infringement claims, asserting that Matthews was distributing sales literature marketing the Resomation alkaline hydrolysis equipment using a picture that actually depicted one of Biosafe's units instead of one of the Resomation units. The letter further stated that Biosafe could pursue "a variety of remedies for disputes involving intellectual property rights," including a claim for patent infringement if it were "determined that a new installation by Resomation [was] operated in a manner covered by any of Biosafe's patents." Matthews responded by stating that while Biosafe's letter made "vague, general references to certain patent claims and process parameters, [its] allegations [were] so vague and incomplete" that Matthews was "at a loss to respond."

Matthews' amended complaint further alleged that Biosafe had "launched a bad faith whispering campaign in the funeral home marketplace, by making accusations and veiled threats to potential customers that [Matthews'] Bio Cremation™ equipment" infringed Biosafe's patents. Matthews asserted, moreover, that one of its customers, Stewart Enterprises, Inc., told Matthews that it was reluctant to buy the Bio Cremation™ equipment because of the accusations made by Biosafe.

On May 27, 2011, Biosafe moved to dismiss all counts of Matthews' amended complaint for lack of declaratory judgment jurisdiction and for failure to adequately plead state-law claims. On September 27, 2011, the district court granted Biosafe's motion to dismiss. The court concluded that Matthews had not made "meaningful

preparation" to conduct potentially infringing activity, *District Court Decision*, 2011 WL 4498935, at *6 (citations and internal quotation marks omitted), since the "parameters used in the operation of Matthews' devices [were] not settled" and those devices could "be operated with parameters outside of the various ones specified" in the Method Patents, *id.* at *8 (citations and internal quotation marks omitted). Because the potentially infringing features of the Bio Cremation™ system were "fluid and indeterminate," Matthews' claim "lack[ed] the necessary reality to satisfy the constitutional requirements for declaratory judgment jurisdiction." *Id.* (citations and internal quotation marks omitted). Given that it had no information regarding the operating parameters of Matthews' Bio Cremation™ equipment, the district court declined to provide "an advisory opinion specifying what combinations of parameters are infringing and what combinations of parameters are noninfringing." *Id.* at *9.

The court likewise dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), Matthews' state-law claims alleging trade libel, defamation, and tortious interference with contractual relations. It noted that "bad faith" was a required element of Matthews' state-law claims, but that Matthews had failed to adequately plead the bad faith element. The court concluded that a finding of bad faith could not be premised on the dissemination of information that was "objectively accurate," and that Matthews' "bald assertions" were insufficient to support its claim that Biosafe's infringement allegations were made in bad faith. *District Court Decision*, 2011 WL 4498935, at *11-12 (citations and internal quotation marks omitted).

Matthews then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II. DISCUSSION

A. *Standard of Review*

"Whether an actual controversy exists under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is a question of law that is subject to plenary appellate review." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 878 (Fed. Cir. 2008). Review of the dismissal of Matthews' state-law claims for failure to state a claim upon which relief could be granted is likewise subject to de novo appellate review. *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1326 (Fed. Cir. 2004); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000).

B. *The Declaratory Judgment Act*

The Declaratory Judgment Act does not provide an independent basis of subject matter jurisdiction.[2] *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Instead, "[i]ts remedy may lie only if the court has jurisdiction from some other source." *Cat Tech*, 528 F.3d at 879; *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the time

---

[2] In relevant part, the Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

the claim for declaratory relief is filed.[3]  *Arris Grp., Inc. v. British Telecomms., PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

Because Article III of the Constitution restricts the judicial power to the adjudication of "Cases" or "Controversies," U.S. Const. Art. III, § 2, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." *Aetna*, 300 U.S. at 240.  Instead, a justiciable controversy exists only where a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and will "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 240-41; *see MedImmune*, 549 U.S. at 127.

"There is . . . no facile, all-purpose standard to police the line between declaratory judgment actions which satisfy the case or controversy requirement and those that do not." *Cat Tech*, 528 F.3d at 879.  Accordingly, in determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case, with the fundamental inquiry being "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

---

[3]  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Accordingly, even if a case or controversy exists, the trial court has significant discretion in determining whether or not to exercise declaratory judgment jurisdiction. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).

reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (footnote omitted) (citations and internal quotation marks omitted); *see Cat Tech*, 528 F.3d at 879. Here, as the trial court correctly concluded, Matthews' dispute with Biosafe lacks the requisite immediacy and reality to support the exercise of declaratory judgment jurisdiction.

C. *Immediacy*

Matthews' dispute with Biosafe lacks immediacy because there is no evidence as to when, if ever, the Bio Cremation™ equipment will be used in a manner that could potentially infringe the Method Patents. Matthews has taken no steps toward direct infringement of those patents. Although it sells the Bio Cremation™ equipment, it does not practice any of the methods disclosed in the Method Patents, and cannot, therefore, be held liable for direct infringement. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim occurs when a party performs all of the steps of the process . . . ." (citations and internal quotation marks omitted)); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("[A] method or process claim is directly infringed only when the process is performed.").

Nor is any potential future infringement by Matthews' customers sufficiently immediate to support the exercise of declaratory judgment jurisdiction.[4] As of May

_____

[4] "[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct

13, 2011, the date it filed its amended complaint, Matthews had sold three Bio Cremation™ units to customers. None of these units, however, had been installed in customers' facilities. Significantly, the Bio Cremation™ equipment can be operated using parameters—related to such items as temperature and pressure settings as well as to pH levels—that do not infringe the Method Patents. Given that Matthews has alleged no facts regarding whether its customers plan to operate the Bio Cremation™ equipment in a manner that could even arguably infringe the Method Patents, its dispute with Biosafe is too remote and speculative to support the exercise of declaratory judgment jurisdiction.

"A party may not obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." *Cat Tech*, 528 F.3d at 881 (citations and internal quotation marks omitted); *see also Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."). Until some specific and concrete evidence regarding how Matthews' customers plan to use the cremation units is available, any judicial determination regarding whether such use would infringe the

---

infringement by its customers." *Arris*, 639 F.3d at 1375 (footnote omitted). Even assuming *arguendo* that Matthews could be held liable for induced or contributory infringement, however, its dispute with Biosafe is not ripe for review given that, as will be discussed more fully below, the parameters under which Matthews' customers plan to operate the Bio Cremation™ equipment are not yet known.

Method Patents would be premature. *See Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1379 (Fed. Cir. 2004) (concluding that a dispute lacked the required immediacy where a prototype of the product in question would not be operational until more than a year after the complaint was filed); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (affirming the dismissal of a declaratory judgment claim where clinical trials of an allegedly infringing product had just begun and it was "years away" from being approved by the Food and Drug Administration ("FDA")); *Lang v. Pac. Marine & Supply Co.,* 895 F.2d 761, 764 (Fed. Cir. 1990) (concluding that the actual controversy requirement was not satisfied where the allegedly infringing product "would not be finished until at least 9 months after the complaint was filed").

As Matthews correctly notes, a showing of actual infringement is not required for a case or controversy to exist. *See MedImmune*, 549 U.S. at 134 (emphasizing that a party need not "bet the farm, or . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights"). On the other hand, however, when it is unclear when any even arguably infringing activity will occur, a dispute will lack the immediacy necessary to support the exercise of declaratory judgment jurisdiction. *See Sierra,* 363 F.3d at 1379. "[A] party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement," but "the greater the length of time before potentially infringing activity is expected to occur, the more likely the case lacks the requisite immediacy." *Cat Tech*, 528 F.3d at 881 (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("'[S]ome day' intentions—without any description of

concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Here, Matthews' dispute with Biosafe lacks the requisite immediacy because it is unclear when, if ever, Matthews' customers will use the Bio Cremation™ equipment in a manner that could even arguably infringe the Method Patents. *See Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2007) (concluding that there was no declaratory judgment jurisdiction where a generic drug manufacturer, who sought declaratory relief in 2005, did not anticipate filing a new drug application with the FDA until "at least 2010-2012, if ever" (citations and internal quotation marks omitted)); *see also Arris*, 639 F.3d at 1374 (emphasizing that a party does not obtain standing to obtain a declaratory judgment of non-infringement simply because it has suffered "economic injury" as a result of a patentee's infringement allegations); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("*MedImmune* does not change our long-standing rule that the existence of a patent is not sufficient to establish declaratory judgment jurisdiction.").

D. *Reality*

Matthews' dispute with Biosafe likewise fails to meet constitutionally-mandated reality requirements. "In the context of patent litigation, the reality requirement is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Cat Tech*, 528 F.3d at 882 (citations omitted). Thus, "[t]he greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject—in short, detached from

eventual reality." *Sierra*, 363 F.3d at 1379. As both Biosafe and Matthews acknowledge, the Bio Cremation™ equipment can be operated using a variety of process parameters, some of which would not infringe the Method Patents. *See* Br. of Defendants-Appellees at 8-9 ("Each of the independent claims of the Method Patents has clearly stated operating parameters that can be avoided to perform alkaline hydrolysis of a deceased human."); Br. of Plaintiff-Appellant at 26-27 ("[I]t is the essence of Matthews's case that Bio Cremation™ does operate outside of [Biosafe's] patents."). Since Matthews has never provided information regarding the specific parameters under which its units will likely be operated, it would be impossible to determine whether such operation could meet the claim limitations contained in the Method Patents. As we explained in *Benitec*, a party has no right to obtain declaratory relief when it provides "insufficient information for a court to assess whether [its future activities] would be infringing or not." 495 F.3d at 1349.

*Cat Tech*, upon which Matthews relies, is inapposite. There, we found that there was a justiciable controversy where the declaratory judgment plaintiff had finalized the design of four different configurations for devices used to place catalyst particles into multi-tube chemical reactors. 528 F.3d at 880-82. The plaintiff stood ready, moreover, to produce such devices upon receiving an order from a customer. *Id.* at 881. Here, by contrast, there is no indication that Matthews' customers have settled upon a fixed protocol for using the Bio Cremation™ equipment. Because Matthews' technology is "fluid and indeterminate" rather than "substantially fixed," its dispute with Biosafe lacks the requisite reality to support the exercise of declaratory judgment jurisdiction. *Id.* at 882; *see Sierra*, 363 F.3d at 1379-80 (concluding that declaratory relief was not available where development of the device

in question was "at an early stage" and its design was "fluid and indeterminate" when the complaint was filed); *Telectronics*, 982 F.2d at 1527 (affirming the dismissal of a complaint where "[t]here was no certainty that the device when approved would be the same device that began clinical trials"); *see also Int'l Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1216 (7th Cir. 1980) ("Our concern is not that the [product in question] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed."). Simply put, because the operating protocols for the Bio Cremation™ units are unknown, any judicial determination as to whether operation of those units could infringe the Method Patents would constitute an advisory opinion based upon a hypothetical set of facts. *See Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988) ("At the heart of the 'case or controversy' requirement is the prohibition against advisory opinions.").

E. *The System Patent*

The district court likewise correctly determined that it had no jurisdiction over the System Patent. That patent did not issue until nearly a month after Matthews filed its complaint. There is no doubt that, under certain circumstances, a litigant is allowed to supplement his pleadings to include events occurring after a complaint is filed. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). Here, however, because the trial court had no jurisdiction over the Method Patents at issue in Matthews' original complaint, it was without authority to consider the System Patent which issued

after that complaint was filed. "It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 570-71 (2004) (citations and internal quotation marks omitted); *see also GAF Bldg. Materials Corp. v. Elk Corp.,* 90 F.3d 479, 483 (Fed. Cir. 1996) ("[L]ater events may not create jurisdiction where none existed at the time of filing." (citations and internal quotation marks omitted)). Thus, as the trial court correctly concluded, absent "predicate jurisdiction" based upon the Method Patents, it had no authority to exercise jurisdiction over the System Patent. *District Court Decision*, 2011 WL 4498935, at *10.

F. *State-Law Claims*

In addition to seeking a declaratory judgment of non-infringement and invalidity with respect to the Method and System Patents, Matthews also asserted state-law claims for trade libel, defamation, and tortious interference with contractual relations. Matthews, however, failed to plead the bad faith element necessary to support its state-law claims.

"[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Accordingly, Matthews' state-law claims could "survive federal preemption only to the extent that those claims [were] based on a showing of 'bad faith' action in asserting infringement." *Id.* Matthews alleges that Biosafe officials made "thinly-veiled threats of liability" for patent infringement to both Matthews' employees and its customers. Even assuming *arguendo* that Biosafe made infringement allegations, however, there is no evidence

that such allegations were objectively baseless. "A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless." *Id.* at 1377; *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights."). The Method Patents disclose the use of an alkaline hydrolysis process to dispose of various types of waste, such as medical waste and hazardous waste, while the Bio Cremation™ equipment uses an alkaline hydrolysis process to dispose of human remains. Because Matthews points to nothing to indicate that Biosafe's alleged infringement allegations were so unreasonable as to be objectively baseless, the trial court correctly concluded that Matthews failed to sufficiently plead the bad faith element necessary to support its state-law claims.[5] *See Dominant Semiconductors Sdn. Bhd. v.*

---

[5] Matthews asserts that Gordon I. Kaye and Peter B. Weber, the applicants for several of the Method Patents, made false statements to the United States Patent and Trademark Office when prosecuting their applications. Absent any evidence, however, that Biosafe itself engaged in inequitable conduct—or had knowledge of such conduct on the part of Kaye and Weber—there is no showing of the bad faith required to support Matthews' state-law claims. In order to survive Biosafe's motion to dismiss under Rule 12(b)(6), Matthews was required to do more than make bald assertions that Biosafe acted in "bad faith." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

*OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." (citations and internal quotation marks omitted)); *see also Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."). This court has "uniformly upheld a patentee's right to publicize the issuance of patents and to so inform potential infringers." *Mikohn*, 165 F.3d at 897.

Furthermore, as the trial court correctly concluded, Matthews' state-law claims would not be ripe for review even if it had properly pled the required bad faith element. *See District Court Decision*, 2011 WL 4498935, at *14 ("[T]here is little hardship in waiting . . . until Matthews has actually delivered its first units and Matthews' customers have used them. Once the facts are actually developed, a suit may be appropriate. At present, however, it is not."). As noted previously, in order to ascertain whether Biosafe's infringement allegations were made in "bad faith," the trial court would be required to determine whether those allegations were objectively baseless. The court would have no basis for determining whether Biosafe's infringement allegations were objectively baseless, however, until it had some particularized knowledge as to

---

provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations and internal quotation marks omitted)).

how Matthews' customers planned to operate the Bio Cremation™ equipment. Thus, until some specific evidence regarding the operating parameters for the Bio Cremation™ units is available, any determination as to whether Biosafe acted unreasonably in asserting infringement would be premature. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations and internal quotation marks omitted)).

## III. CONCLUSION

Accordingly, the order of the United States District Court for the Western District of Pennsylvania is affirmed.

## **AFFIRMED**