# United States Court of Appeals for the Federal Circuit

---

**ARKEMA INC. AND ARKEMA FRANCE,**
*Plaintiffs-Appellants,*

**v.**

**HONEYWELL INTERNATIONAL, INC.,**
*Defendant-Appellee.*

---

2012-1308

---

Appeal from the United States District Court for the Eastern District of Pennsylvania (Philadelphia) in No. 10-CV-2886, Judge William H. Yohn, Jr.

---

Decided: February 5, 2013

---

John DiMatteo, Willkie Farr & Gallagher, LLP, of New York, New York, argued for plaintiffs-appellants. With him on the brief were Michael W. Johnson and Aparnaa B. Saini.

Gregg F. LoCascio, Kirkland & Ellis, LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were Sean M. McEldowney and Anders P. Fjellstedt; and Laura M. Burson, Kirkland & Ellis, LLP, of Los Angeles, California.

---

Before DYK, PLAGER, and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

Defendant Honeywell International, Inc. ("Honeywell") and plaintiffs Arkema Inc. and Arkema France ("Arkema") compete in the manufacture and sale of automotive refrigerants. Honeywell owns United States Patent No. 8,033,120 ("the '120 patent") and United States Patent No. 8,065,882 ("the '882 patent"). Arkema sought a declaratory judgment that by entering into contracts to supply HFO-1234yf ("1234yf"), a next-generation automotive refrigerant, to automobile manufacturers for use in automobile air conditioning systems, it would not incur liability as an indirect infringer under the '120 and '882 patents, which cover methods of using 1234yf in automobile air conditioning systems.

The district court refused to entertain Arkema's request for declaratory judgment, denying Arkema's motion to supplement its complaint to add declaratory claims with respect to the '120 and '882 patents on the grounds that there was no justiciable controversy.

We find that the district court erred in its determination that there is no justiciable controversy, and reverse the district court's denial of Arkema's motion to supplement. We remand for further proceedings consistent with this opinion.

BACKGROUND

Before the mid-2000s, automobile manufacturers used a refrigerant called R-134a for automobile air conditioners. In 2006, global warming concerns prompted the European Union to enact new regulations requiring automobiles to use refrigerants with low "global warming potential." The regulations apply to all new automobile platforms beginning in 2013 and to all new automobiles by 2017. The United States has not yet adopted similar

regulations, but U.S. and foreign automobile manufacturers are both transitioning to 1234yf, which has a low global warming potential, and has become "remarkably successful," according to Honeywell's expert, Thomas R. Varner.[1]  J.A. 376.  Automobile manufacturers are already signing long-term contracts to purchase 1234yf. Both Arkema and Honeywell wish to supply the industry with 1234yf, and both have invested substantial resources in the production of 1234yf.  Arkema has already built a manufacturing facility for 1234yf in France and has plans to build another facility to meet growing demand.  Honeywell has a plant in New York and is developing a much larger facility in Louisiana.  Arkema is concerned that if it enters into supply contracts it will indirectly infringe Honeywell's patents.

Honeywell owns a number of patents relating to 1234yf.  United States Patent No. 7,534,366 ("the '366 patent") claims a heat transfer composition combining 1234yf with a polyalkylene glycol lubricant.  Claim 1 reads:

> 1. A heat transfer composition for use in an air conditioning system comprising:
>
>> (a) at least about 50% by weight of [1234yf] having no substantial acute toxicity; and

---

[1]    Although there are other refrigerants with low global warming potential, Arkema alleges that 1234yf "has become the de facto standard refrigerant in Europe and the United States."  First Supp. Compl. 2, *Arkema, Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886 (E.D. Pa. Dec. 15, 2011), ECF No. 58-1.  There is no dispute that there is substantial demand for 1234yf.  Varner testified that "[t]here is extensive evidence of demand for [1234yf] among automobile manufacturers," and that "[t]his demand exists even though there is currently no regulatory requirement mandating its use."  J.A. 370-71.

(b) at least one poly alkylene glycol lubricant in the form of a homopolymer or co-polymer consisting of 2 or more oxypropylene groups and having a viscosity of from about 10 to about 200 centistokes at about 37° C.

'366 patent col. 13 ll. 37-45. Polyalkylene glycol lubricants are part of the heat transfer composition in almost all automobile air conditioning systems. Similarly, United States Patent No. 7,279,451 ("the '451 patent") claims a heat transfer composition including 1234yf with a sufficiently low global warming potential.[2] '451 patent col. 17 l. 57 to col. 18 l. 8.

Most pertinent here, Honeywell also owns U.S. patents directed to methods of using 1234yf. The '120 patent, which claims priority to the '366 patent, is directed to a method of cooling air using 1234yf combined with a lubricant.[3] Claim 1, which is representative, reads:

1. A method of cooling air comprising:

(a) providing a heat transfer fluid comprising at least one lubricant and [1234yf]; and

(b) cooling said air by vaporizing said refrigerant by causing heat to be transferred from the air being cooled to said heat transfer fluid.

---

[2]     Some claims of the '451, '120, and '882 patents are not limited to 1234yf; they include claim limitations directed to genuses of compounds of which 1234yf is a member. Because only 1234yf is at issue in this appeal, we refer to such broader claims as being directed to 1234yf even though they are not limited to it.

[3]     The '120 patent is currently the subject of an inter partes reexamination proceeding initiated by a third party.

'120 patent col. 13 ll. 14-34. Similarly, the '882 patent claims priority to the '451 and '366 patents, and covers methods of cooling air in an automobile with 1234yf. Claim 1 reads:

> 1. A method of transferring heat to or from a fluid or body to provide cooling of air in an automobile, said method comprising:
>
> > (a) providing a heat transfer system comprising an automobile air conditioning system;
> >
> > (b) providing in said system a heat transfer composition comprising at least one lubricant and [1234yf].

'882 patent col. 17 ll. 33-56. Honeywell also owns European Patent No. 1,716,216, which is a counterpart to Honeywell's U.S. patents on 1234yf and includes method claims.

In November 2009, Honeywell filed suit against Arkema for infringement of the European patent based on Arkema's offers to sell 1234yf in Germany. In June 2010, Arkema brought suit against Honeywell in the United States District Court for the Eastern District of Pennsylvania, seeking declaratory judgment that the '451 and '366 composition patents were invalid and not infringed by Arkema's plans to supply U.S. automobile manufacturers with 1234yf.[4] Honeywell counterclaimed, asserting

---

[4] During this litigation and prior to this appeal, the United States Patent and Trademark Office rejected all claims of the '451 patent during an inter partes reexamination proceeding. Honeywell then gave Arkema a covenant not to sue on the '451 patent, and the district court dismissed both parties' claims directed to the '451 patent. The '366 patent remains a part of the litigation before the district court, which was stayed pending disposition of this appeal.

that Arkema's sale and offer for sale of 1234yf in the United States constituted infringement of both patents. Honeywell specifically alleged (and Arkema admitted) that Arkema "has sought, and continues to seek, to compete with Honeywell for supplying 1234yf to automobile manufacturers in the U.S.," and that Arkema is "aware that U.S. automobile manufacturers purchase . . . 1234yf primarily or exclusively for use in automobile air conditioning systems." Def.'s Answer, Affirmative Defenses and Countercls. at 15, *Arkema, Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886, (E.D. Pa. Aug. 20, 2010), ECF No. 10 ("Honeywell Answer"). While the suit was in discovery, Honeywell obtained the '120 and '882 patents. Arkema then moved to supplement its complaint to seek declaratory judgment of non-infringement and invalidity as to the '120 and '882 patents, fearing liability under those patents should it proceed with plans to sell 1234yf to U.S. automobile manufacturers.

On February 3, 2012, the district court denied Arkema's motion to supplement. *Arkema, Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886, 2012 WL 360189, at *1 (E.D. Pa. Feb. 3, 2012). Although the district court found that there would be no undue prejudice to Honeywell if Arkema were permitted to supplement its complaint, the district court found that Arkema's new claims did not present an Article III case or controversy. *Id.* at *2 n.5. As a result, the district court concluded that those claims could not survive a motion to dismiss and that supplementation would therefore be futile. *Id.* at *3. The district court concluded that Arkema could not be charged with directly infringing the '120 and '882 patents because, as a mere supplier, Arkema had no plans to use 1234yf in any manner that could directly infringe those patents, which cover only methods of using 1234yf. *Id.* at *4. As for indirect infringement, the district court concluded that Arkema "is not currently or imminently in danger of

facing liability for contributory infringement or induced infringement." *Id.* at *5.

On March 8, 2012, with the agreement of both parties, the district court certified its order denying Arkema's motion to supplement as a final judgment appealable under Fed. R. Civ. P. 54(b). Order, *Arkema, Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886 (E.D. Pa. Mar. 8, 2012), ECF No. 80. Arkema timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The district court's denial of Arkema's motion to supplement its complaint was based on its conclusion that Arkema's supplemental claims were not justiciable. We review that legal conclusion de novo. *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1335-36 (Fed. Cir. 2007). Arkema bears the burden of proving the existence of an Article III case or controversy. *See Arris Grp., Inc. v. British Telecommc'ns PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

## I

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In authorizing this procedure, Congress recognized that declaratory judgment is "especially useful in avoiding the necessity . . . of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages." S. Rep. No. 73-1005, at 2-3 (1934). Thus, the Supreme Court has held that Article III does not require that a landowner "bet the farm" by risking forfeiture of his land before challenging the constitutionality of a state

anti-alien land law.  *See Terrace v. Thompson*, 263 U.S. 197, 216 (1923).  Nor does Article III require an individual to risk prosecution under state criminal trespass laws before seeking declaratory judgment of his rights.  *Steffel v. Thompson*, 415 U.S. 452, 454 & n.1, 459 (1974).

The Supreme Court's most pertinent decision is *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).  There, the Court held that Article III did not require a patent licensee to cease payment under the license in order to seek declaratory judgment of the patent's invalidity.  *Id.* at 128, 137.  The Court reiterated that the proper test of when an action for declaratory judgment presents a justiciable controversy is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The Court also made clear that this test is satisfied when the declaratory judgment plaintiff is put "to the choice between abandoning his rights or risking prosecution."  *Id.* at 129.  Thus, the Court held that "[t]he rule that a plaintiff must destroy a large building, bet the farm, or . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III."  *Id.* at 134.  In other words, a declaratory judgment is "an alternative to pursuit of the arguably illegal activity."  *Id.* at 129 (quoting *Steffel*, 415 U.S. at 480 (Rehnquist, J., concurring)).  Following *MedImmune*, we have held that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

## II

On its face, this is a quintessential example of a situation in which declaratory relief is warranted. The relevant facts are not in dispute. Arkema has concrete plans for offering 1234yf to automobile manufacturers for use in automobile air conditioning systems and now desires to enter into contracts with automobile manufacturers to supply 1234yf. However, if Honeywell's view of its patent coverage prevails, then proceeding with its plans would expose Arkema to significant liability. Indeed, Honeywell has made it clear that it will protect its patent rights against any such activity by Arkema. Honeywell has already asserted claims against Arkema in the United States for infringement of other patents covering the same technology and in Germany relating to Arkema's activities involving 1234yf and automobile air conditioning systems. There is far more here than a mere showing of "economic injury." Rather, Arkema is seeking a determination of a legal right under the method patents covering its own activities. There is a controversy between Arkema and Honeywell as to legal rights in the 1234yf technology.

## III

The district court nevertheless concluded that there was no justiciable controversy. We disagree. First, the district court determined that "Arkema has neither alleged nor offered evidence that an Arkema customer has committed an act of direct infringement," relying on our decision in *Arris*. *Arkema*, 2012 WL 360189, at *5. To the extent that the district court suggests that there must actually be acts of direct infringement the district court is mistaken. While *Arris* found such accusations sufficient for declaratory judgment jurisdiction in a suit brought by a supplier, *Arris* did not set forth an overarching test for a supplier's standing to seek a declaratory judgment regarding its potential indirect infringement liability;

rather, it identified circumstances that have been held *sufficient* (rather than necessary) for declaratory judgment jurisdiction. 639 F.3d at 1375. Nor is it necessary that a patent holder make specific accusations against either the potential direct infringers or Arkema. *Id.* at 1379; *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("A specific threat of infringement litigation by the patentee is not required to establish jurisdiction.").

Even the district court appeared to agree that actual direct infringement is not required. The court concluded that:

> While specific infringing acts are not necessary for declaratory-judgment jurisdiction where there is specific planned activity, Arkema has not shown that its specific planned activity (supplying [1234yf]) may subject it to liability for indirect infringement. Arkema has not adduced any evidence as to which potential customer will imminently commit an act of direct infringement, when this may happen, or how.

*Arkema*, 2012 WL 360189, at *6 (citation omitted). The level of specificity required by the district court does not comport with our cases. There is no question that automobile manufacturers install air conditioners in the automobiles that they sell, that they test those air conditioners, and that the purchasers of those automobiles use the air conditioners. It is also undisputed that Arkema wishes to sell (and that manufacturers wish to purchase) 1234yf for use in those air conditioners, and that Honeywell's position is that use of 1234yf in automobile air conditioners infringes the method patents. There is thus no question that both the automobile manufacturers and their ultimate consumers will—in Honeywell's view—infringe the method patents. There is no requirement that Arkema identify the particular manufacturers that

will purchase the 1234yf or the particular automobile purchasers who will purchase the cars from the manufacturers, or the particular dates on which this will occur.

Nor is it necessary that Honeywell have directly accused Arkema of potential indirect infringement. Even under the now-discarded reasonable apprehension of suit test,[5] it was well established that a sufficient controversy existed for declaratory judgment jurisdiction where the patentee had accused the declaratory judgment plaintiff of misappropriating the same technology in related litigation. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987) (patents issued during trade secret litigation regarding the same technology); *see also Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002); *Teva*, 482 F.3d at 1344-45 ("Related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents."). Here, Honeywell has accused Arkema of infringing its rights with respect to 1234yf in litigation over the closely related '366 patent and the European patent claiming methods of using 1234yf. This creates a sufficient affirmative act on the part of the patentee for declaratory judgment purposes. Furthermore, Honeywell has declined to grant Arkema a covenant not to sue on the '120 and '882 patents, which further suggests that there is an active and substantial controversy between the parties regarding their legal rights with respect to those patents. *Arris*, 639 F.3d at 1381; *see also Already, LLC v. Nike, Inc.*, 568 U.S. ___ (2013) (slip op. at 5-6) (covenant not to

---

[5] While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, *MedImmune*, 549 U.S. at 132 n.11; *SanDisk*, 480 F.3d at 1380, such a showing remains sufficient to establish jurisdiction. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012).

sue was sufficient to moot Article III controversy because it broadly barred trademark infringement claim against the declaratory judgment plaintiff, its distributors, and its customers).

Second, the district court found that Arkema did not allege an adequate "specific planned activity" because "there are methods for using [1234yf] in an automobile air-conditioning system that will not infringe the method patents." *Arkema*, 2012 WL 360189, at *6. On their face the method patents cover any use of 1234yf in an automobile air conditioner as part of a heat transfer composition (i.e., combined with a lubricant). *See* '120 patent col. 13 ll. 14-34; '882 patent col. 19 ll. 42-62. And at oral argument, Honeywell conceded that some claims of the '120 and '882 patents do not require a specific lubricant and that all known uses of 1234yf in an automobile air conditioning system require a lubricant. Thus, Honeywell admits that there are no known methods of using 1234yf in an automobile air conditioning system that do not at least arguably infringe its patents.[6]

In response to Arkema's interrogatories, Honeywell asserted that "Arkema knew that []1234yf was especially

---

[6]      There is also no dispute that Arkema's prospective customers will likely use 1234yf with a polyalkylene glycol lubricant, as some claims require. Honeywell specifically alleged that Arkema's customers would "purchase 1234yf primarily or exclusively for use with certain lubricants," Honeywell Answer 16, and its expert testified that "Polyalkylene Glycol[] is the type of lubricant that is generally used in belt-driven automobile air conditioning systems." J.A. 292. Likewise, Arkema states that "automobile manufacturers will use polyalkylene glycol, the standard lubricant in the industry, in, at least, the vast majority of their air conditioning systems." Appellant's Br. 25.

made for use in air conditioning systems . . . and that non-infringing uses of [1234yf] . . . if any, were experimental and/or not substantial." J.A. 268. Similarly, Honeywell's expert, Donald B. Bivens, testified that 1234yf "is not a common component suitable for substantial non-infringing uses." J.A. 320. And while a party need not concede infringement to demonstrate a justiciable controversy, *see Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 738 (Fed. Cir. 1988), Arkema admits that "there are no non-infringing uses for 1234yf as a refrigerant in automobile air-conditioning systems" and that "*any* design employing 1234yf in an automobile will infringe the broad claims of the new patents." Appellant's Br. 33. So too there can hardly be any question that Arkema would arguably be liable for induced infringement if it sells 1234yf for use in automobile air conditioning systems. Where, as here, there is no dispute that the intended use would be at least arguably infringing and actively encouraged by the declaratory judgment plaintiff, a controversy is "sufficiently real" for the purposes of declaratory judgment jurisdiction.

Third, the district court found that any "threshold acts of direct infringement are not sufficiently immediate to create a justiciable controversy" because "the first predicted commercial launch of any product using [1234yf] is at least one year away." *Arkema*, 2012 WL 360189, at *6. Honeywell does not dispute that long-term supply contracts are already being signed. Indeed, Honeywell's expert Thomas R. Varner testified that Honeywell and other suppliers of 1234yf have already entered into numerous long-term contracts to supply 1234yf to automobile manufacturers. Such circumstances have put Arkema in a *present* position of either committing to contracts that could expose it to liability for indirect infringement or abandoning its plans to supply 1234yf to automobile manufacturers in the United States. Therefore, Arkema's need for a declaratory judgment clarifying

its rights is sufficiently immediate under Article III. *See MedImmune*, 549 U.S. at 134.

This is not a case where the declaratory judgment plaintiff alleged only that it would "consider" potentially infringing activities.[7] Rather, Arkema alleges a present intent to supply automobile manufacturers in the United States with 1234yf for potentially infringing uses. Nor is this a case where "the accused infringers had not distributed sales literature [or] prepared to solicit orders." *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990). Honeywell's own allegations state that Arkema is marketing 1234yf to automobile manufacturers in the United States, and Arkema admits that it has already responded to at least one supply request from a U.S. automobile manufacturer and that it is "poised to respond to other requests for quotations to supply 1234yf." First Supp. Compl. 7, *Arkema, Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886 (E.D. Pa. Dec. 15, 2011), ECF No. 58-1.

Finally, the district court concluded that Arkema had not satisfied the "'reality' requirement" under *MedImmune* because it "has not demonstrated that the design of its customers' products . . . is sufficiently fixed." *Arkema*, 2012 WL 360189, at *6. As discussed above, however, Arkema's relevant plans are clear. It intends to offer 1234yf for use in automobile air conditioning systems. Honeywell's expert Dr. Varner testified that "[b]oth

---

[7] *E.g.*, *Ass'n of Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1321 (Fed. Cir. 2012) (holding that doctors who alleged only that they would "consider" resuming potentially infringing activities lacked standing to seek a declaratory judgment); *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2008) (finding that the declaratory judgment plaintiff lacked standing because it admitted that it did not anticipate pursuing infringing activity for several years, "if ever").

Arkema and Honeywell provided quotes to supply [1234yf] to automobile manufacturers *for use as the refrigerant component of heat transfer compositions for automobile air conditioning systems.*" J.A. 376 (emphasis added). Dr. Varner also repeatedly emphasized the "high demand for [1234yf] *in heat transfer compositions in air conditioning systems.*" J.A. 381 (emphasis added). This is not a situation in which there is uncertainty about whether the supplier's product is going to be used in a way that might or might not infringe the patentee's rights.[8] Rather, the contentions of both parties make clear that Arkema's prospective customers plan to use 1234yf with a lubricant in automobile air conditioning systems. Any uncertainty concerning the precise parameters under which automobile manufacturers will use 1234yf is irrelevant because Honeywell's patents are not limited to a particular set of parameters.

Accordingly, we conclude that the controversy between Arkema and Honeywell regarding the '120 and '882 patents is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

## CONCLUSION

We hold that the district court erred in denying Arkema leave to supplement its complaint by adding declaratory judgment claims regarding the '120 and '882 patents. There is an Article III case or controversy between Arkema and Honeywell regarding the infringement

---

[8]   *E.g.*, *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1330-31 (Fed. Cir. 2012) (declaratory judgment plaintiff's claim lacked sufficient reality when the equipment it sold could be operated using either infringing or non-infringing parameters, and the plaintiff did not allege that the equipment would be operated using infringing parameters).

and validity of those patents. We reverse the district court's denial of Arkema's motion to supplement its complaint, and remand for further proceedings consistent with this opinion.

## REVERSED and REMANDED

Costs to Arkema.