NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CISCO SYSTEMS, INC.,**
*Plaintiff-Appellant,*

**v.**

**ALBERTA TELECOMMUNICATIONS RESEARCH CENTER, (doing business as TR Labs) AND TR TECHNOLOGIES, INC.,**
*Defendants-Appellees.*

---

2012-1687

---

Appeal from the United States District Court for the Northern District of California in No. 12-CV-3293, Judge Phyllis J. Hamilton.

---

Decided: August 29, 2013

---

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr, LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were LOUIS W. TOMPROS and ANDREW J. DANFORD.

GEORGE C. SUMMERFIELD, Stadheim & Grear Ltd., of Chicago, Illinois, argued for defendants-appellees. With him on the brief was JOSEPH A. GREAR.

---

Before RADER, *Chief Judge,* O'MALLEY, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Cisco Systems, Inc. ("Cisco") appeals from a final judgment of the United States District Court for the Northern District of California, dismissing its declaratory judgment action for lack of subject matter jurisdiction. For the reasons explained, we *affirm* the district court's finding of no jurisdiction.

## BACKGROUND

Cisco develops and manufactures networking equipment components used in telecommunications infrastructures. Cisco sells its products to national and regional telecommunications providers, who use the products to build telecommunication networks. Among other products, Cisco supplies its ONS 15454 multiservice platforms and CRS routers, which are network components used to deliver voice and data content. Alberta Telecommunications Research Centre, d/b/a TR Labs, is a Canadian non-profit research consortium with universities, companies, and government agencies as members. TR Technologies Inc. (together with Alberta Telecommunications Research Centre, "TR Labs") is a Canadian corporation and the exclusive licensee of patents owned by Telecommunications Research Laboratories.[1] Alberta Telecommunications Research Laboratories is the owner by assignment of the TR Labs patents. The TR Labs patents are directed

---

[1]    The patents relevant to this appeal are U.S. Patent Nos.: 4,956,835 ("the '835 patent"); 5,850,505 ("the '505 patent"); 6,377,543 ("the '543 patent"); 6,404,734 ("the '734 patent"); 6,421,349 ("the '349 patent"); 6,654,379 ("the '379 patent); 6,914,880 ("the '880 patent"); and 7,260,059 ("the '059 patent") (collectively, "the TR Labs patents").

to telecommunication networks and claim the networks themselves (i.e., system claims) and methods performed on the networks.

TR Labs has brought several lawsuits asserting the TR Labs patents against various national and regional telecommunications network providers; many are customers of Cisco. These lawsuits are currently pending in a multi-district litigation in the District of New Jersey. The consolidated cases include lawsuits against AT&T, Verizon, and Comcast. There is another pending case against seven defendants in the District of Colorado ("the Colorado case"). In some of the complaints served on these network providers, TR Labs accused the defendants of infringing the asserted patents "based on" the use of Cisco products in their network systems. As those cases progressed, moreover, TR Labs provided claim charts to the defendants which tie TR Labs' infringement contentions to the respective defendants' use of Cisco products, identified by model number, and quote Cisco's product literature to describe the allegedly infringing functionality made possible by those Cisco products. In some of the cases, TR Labs even identifies the Cisco components as comprising "a Cisco MPLS network."

In response to TR Labs' actions against its customers, Cisco filed an action in the Northern District of California on June 26, 2012, seeking declaratory judgment of non-infringement and invalidity of the TR Labs patents. TR Labs moved to dismiss Cisco's complaint for lack of subject matter jurisdiction, arguing that Cisco failed to allege facts sufficient to establish that TR Labs had accused Cisco itself of either direct or indirect infringement.

Before opposing TR Labs' motion to dismiss, Cisco sought a covenant not to sue. But, because Cisco sought to include in those covenants a release of its customers in addition to itself, the parties did not reach agreement. Cisco thus opposed TR Labs' motion to dismiss.

The district court granted TR Labs' motion to dismiss, finding that Cisco failed to establish declaratory judgment jurisdiction. *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 892 F. Supp. 2d 1226, 1228 (N.D. Cal. 2012) After noting that Cisco conceded it could not base subject matter jurisdiction on fears of a direct infringement claim against it, the district court also found jurisdiction could not be based on threatened claims of indirect infringement by Cisco. *Id.* at 1232.

The district court did not find the claim charts TR Labs served on Cisco's customers determinative, finding it impossible to tell if the Cisco components were mentioned in those charts only as background information or "as required parts of the accused networks." *Id.* at 1233. Ultimately, the district court found it difficult to tell from the record whether a justiciable controversy yet existed between Cisco and TR Labs.

The trial court then discounted the parties' inability to enter into a covenant not to sue because:

> Finally, the parties' inability to agree on a covenant not to sue is not determinative of this issue. It is true . . . that a patentee's grant of a covenant not to sue a supplier for infringement can eliminate the supplier's standing to bring a declaratory judgment action. . . . However, the converse—that because the parties were unable to agree on the terms of a covenant not to sue, there must necessarily be a justiciable controversy—is not necessarily true, particularly if, as TR Labs claims here, it was unwilling to agree to Cisco's draft proposal because such a covenant not to sue would have essentially resulted in the elimination of TR Labs' ability to sue alleged infringers who also happened to be Cisco's customers.

*Id.*

Cisco appeals that ruling to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2012). When reviewing the decision, we must "accept[] as true all well-pleaded allegations of fact, construed in the light most favorable to the plaintiff." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1321-22 (Fed. Cir. 1998 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed." *Powertech Tech. Inc.*, 660 F.3d at 1306 (citing *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2012); *Benitec Austl., Ltd. v. Necleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007)).

Under the Declaratory Judgment Act, "[i]n the case of an actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court reiterated that the proper test for whether a declaratory judgment action presents a justiciable controversy is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Cisco relies on two of or our prior cases, *Arkema Inc. v. Honeywell International, Inc.*, 706 F.3d 1351 (Fed. Cir. 2013) and *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368 (Fed. Cir. 2011), to support its claim that the district court erred when it dismissed Cisco's complaint. While a close call, we ultimately are unpersuaded that either case justifies reversal here,

particularly given the concessions counsel for TR Labs made during the oral argument before this Court. *See Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358-59 (Fed. Cir. 2013) ("If we rely on Monsanto's representations to defeat the appellants' declaratory judgment claims (as we do), those representations are binding as a matter of judicial estoppel. It is well-established that a party who successfully argues one position is estopped from later adopting a contrary position in a case involving the same patent.").

In *Arkema*, the district court refused to allow Arkema to amend its declaratory judgment complaint to add claims for newly-issued patents, finding no justiciable controversy over those patents. 706 F.3d at 1353. We reversed, holding that a justiciable controversy existed between Arkema and the defendant on the new patents based on Arkema's plans to sell a product allegedly covered by those patents. *Id.* at 1353–54. The parties had a history of litigation, both in the U.S. and abroad, surrounding Arkema's activities with the product allegedly covered by the patents, both old and new. *Id.* at 1357. The patentee acknowledged, moreover, that there were no substantial non-infringing uses for the coolant within the industry which Arkema planned to operate (i.e., the automobile industry). *Id.* at 1358.

In *Arris*, we also found jurisdiction over a declaratory judgment action because an actual controversy existed between the parties. 639 F.3d at 1371. British Telecommunications ("BT") accused Arris customers of infringing its patents by using Arris' products. *Id.* There was substantial communication between BT, the customers, and Arris regarding BT's theories of infringement against both Arris and its customers before the declaratory judgment action was filed. *Id.* at 1372. Additionally, the customers had demanded "that Arris 'defend, indemnify and hold harmless [the customer] from [BT's] assertions of infringement.'" *Id.* Based on this activity, we found

that an actual controversy warranting declaratory judgment jurisdiction existed.

The facts in this case fit neither the facts in *Arkema* nor those in *Arris* and otherwise fail to give rise to a current justiciable controversy between TR Labs and Cisco.

As an initial matter, at oral argument, Cisco's counsel conceded that its products were not identified in claim charts relating to two of the eight patents at issue, the '505 and '543 patents. Oral Argument at 8:20-8:55; 9:30-9:45; 27:46-29:15, *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 2012-1687, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/search/audio.html.[2] Since the reference to Cisco's products in certain of the claim charts is the primary basis upon which Cisco premises its alleged fear that an infringement claim might be asserted against it, the absence of any reference to Cisco products in the charts relating to the '505 and '543 patents greatly undercuts Cisco's claim that a controversy exists as to those patents.

Also at oral argument, TR Labs' counsel conceded that TR Labs has "no basis for suing [Cisco] either for direct or indirect infringement." *Id.* at 24:20-24:26. TR Labs further conceded that there are substantial non-infringing uses of Cisco's products, a point Cisco does not dispute. *Id.* at 17:20-18:50. Given this reality, TR Labs could not assert a claim of contributory infringement against Cisco under 35 U.S.C. § 271(c). S*ee Ricoh Co. v. Quanta Com-*

---

[2]    Cisco's counsel actually pointed to the '379 patent, rather than the '505 patent, but that appears to have been a mistake, albeit an understandable one. There were actually no claim charts submitted in connection with the '379 patent. It was the '505 and '543 patents where the claim charts were submitted, but were void of any reference to Cisco.

*puter, Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) ("The language of the statute incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial noninfringing use."). These facts clearly distinguish the facts here from those at issue in *Arkema*.

Additionally, unlike in *Arris*, there were no protracted discussions between Cisco and TR Labs regarding Cisco's potential liability before filing the declaratory judgment action. And, unlike in *Arris*, Cisco has never asserted that it has indemnity obligations for any liability its customers might incur. Indeed, when asked about indemnity agreements directly during oral argument, Cisco's counsel could not point to any such agreement, promise, or obligation. Oral Argument at 3:45-5:35.

Finally, TR Labs has expressly offered to give Cisco a covenant not to sue Cisco for infringement of any of the asserted patents. As noted above, TR Labs' counsel stated that TR Labs has "no basis for suing [Cisco] either for direct or indirect infringement" and "we were happy" to give Cisco a covenant not to sue. *Id.* at 24:20-24:35. It is understandable that Cisco may have an interest in saving its customers from infringement contentions premised, even in part, on their use of Cisco products. In the circumstances presented here, that interest is simply insufficient to give rise to a current, justiciable case or controversy upon which federal declaratory judgment jurisdiction may be predicated.[3]

---

[3]    Notably, Cisco has not sought to intervene in any of the actions against its customers. Oral Argument at 0:25-0:40.

CONCLUSION

TR Labs' concession that it is willing to grant Cisco an unqualified covenant not to sue, TR Labs' concession that it has no basis for asserting direct or indirect infringement claims against Cisco, including the parties' agreement that Cisco's products have substantial non-infringing uses, and Cisco's failure to identify any obligation to indemnify or defend its customers distinguish this action from others in which this Court has found declaratory judgment jurisdiction and support the district court's finding that it lacked the same. We therefore affirm the district court ruling.

**AFFIRMED**