# United States Court of Appeals for the Federal Circuit

ORGANIC SEED GROWERS AND TRADE
ASSOCIATION, ORGANIC CROP IMPROVEMENT
ASSOCIATION INTERNATIONAL, INC., THE
CORNUCOPIA INSTITUTE, DEMETER
ASSOCIATION, INC., CENTER FOR FOOD SAFETY,
BEYOND PESTICIDES, NAVDANYA
INTERNATIONAL, MAINE ORGANIC FARMERS
AND GARDENERS ASSOCIATION, NORTHEAST
ORGANIC FARMING ASSOCIATION OF NEW
YORK, NORTHEAST ORGANIC FARMING
ASSOCIATION/MASSACHUSETTS CHAPTER, INC.,
NORTHEAST ORGANIC FARMING ASSOCIATION
OF NEW HAMPSHIRE, NORTHEAST ORGANIC
FARMING ASSOCIATION OF RHODE ISLAND, CT
NOFA, NORTHEAST ORGANIC FARMING
ASSOCIATION OF VERMONT, RURAL VERMONT,
OHIO ECOLOGICAL FOOD & FARM
ASSOCIATION, FLORIDA CERTIFIED ORGANIC
GROWERS AND CONSUMERS INC., SOUTHEAST
IOWA ORGANIC ASSOCIATION, MENDOCINO
ORGANIC NETWORK, NORTHEAST ORGANIC
DAIRY PRODUCERS ALLIANCE, MIDWEST
ORGANIC DAIRY PRODUCERS ALLIANCE,
WESTERN ORGANIC DAIRY PRODUCERS
ALLIANCE, CANADIAN ORGANIC GROWERS,
PEACE RIVER ORGANIC PRODUCERS
ASSOCIATION, FAMILY FARMER SEED
COOPERATIVE, SUSTAINABLE LIVING SYSTEMS,
GLOBAL ORGANIC ALLIANCE, FOOD
DEMOCRACY NOW!, FARM-TO-CONSUMER
LEGAL DEFENSE FUND, WESTON A. PRICE
FOUNDATION, MICHAEL FIELDS

**AGRICULTURAL INSTITUTE, FEDCO SEEDS INC., ADAPTIVE SEEDS, LLC, SOW TRUE SEED, SOUTHERN EXPOSURE SEED EXCHANGE, MUMM'S SPROUTING SEEDS, BAKER CREEK HEIRLOOM SEED CO., LLC, COMSTOCK, FERRE & CO., LLC, SEEDKEEPERS, LLC, SISKIYOU SEEDS, COUNTRYSIDE ORGANICS, WILD GARDEN SEED, CUATRO PUERTAS, SEED WE NEED, ALBA RANCH, WILD PLUM FARM, GRATITUDE GARDENS, RICHARD EVERETT FARM, LLC, PHILADELPHIA COMMUNITY FARM, INC, GENESIS FARM, CHISPAS FARMS LLC, MIDHEAVEN FARMS, KOSKAN FARMS, CALIFORNIA CLOVERLEAF FARMS, NORTH OUTBACK FARM, TAYLOR FARMS, INC., RON GARGASZ ORGANIC FARMS, ABUNDANT ACRES, T & D WILLEY FARMS, FULL MOON FARM, INC., COMMON GOOD FARM, LLC, AMERICAN BUFFALO COMPANY, RADIANCE DAIRY, QUINELLA RANCH, NATURE'S WAY FARM LTD., LEVKE AND PETER EGGERS FARM, FREY VINEYARDS, LTD., BRYCE STEPHENS, CHUCK NOBLE, LARHEA PEPPER, PAUL ROMERO, BRIAN WICKERT, BRUCE DRINKMAN, MURRAY BAST, AND DONALD WRIGHT PATTERSON, JR.,**
*Plaintiffs-Appellants,*

**AND**

**OCIA RESEARCH AND EDUCATION INC., NORTHERN PLAINS SUSTAINABLE AGRICULTURE SOCIETY, MANITOBA ORGANIC ALLIANCE, UNION PAYSANNE, FAMILY FARM DEFENDERS INC., INTERLAKE FORAGE SEEDS LTD., KIRSCHENMANN FAMILY FARMS INC., AND JARDIN DEL ALMA,**
*Plaintiffs,*

v.

**MONSANTO COMPANY AND MONSANTO TECHNOLOGY LLC,**
*Defendants-Appellees.*

————————————

2012-1298

————————————

Appeal from the United States District Court for the Southern District of New York in No. 11-CV-2163, Judge Naomi Reice Buchwald.

————————————

Decided: June 10, 2013

————————————

DANIEL B. RAVICHER, Public Patent Foundation, Benjamin N. Cardozo School of Law, of New York, New York, argued for plaintiffs-appellants. With him on the brief was SABRINA Y. HASSAN.

SETH P. WAXMAN, Wilmer Cutler Pickering Hale and Dorr, LLP, of Washington, DC argued for defendants-appellees. With him on the brief were PAUL R. Q. WOLFSON, TODD C. ZUBLER, GREGORY H. LANTIER, CAROLYN J. CHACHKIN and RACHEL L. WEINER.

JUDITH I. MCGEARY, Langley & McGeary, PLLC, of Cameron, Texas, for amici curiae, Farm and Ranch Freedom Alliance, et al.

DAVID C. FREDERICK, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., of Washington, DC for amici curiae, Intellectual Property Professors.

THOMAS F. POCHE, Womble Carlyle Sandridge & Rice, L.L.P., of Washington, DC, for amici curiae, Biotechnology Industry Organization, et al.

———————

Before DYK, BRYSON, and MOORE, *Circuit Judges.*

DYK, *Circuit Judge.*

Appellants, a coalition of farmers, seed sellers, and agricultural organizations, sought declaratory judgments of non-infringement and invalidity with respect to twenty-three patents owned by Monsanto Co. and Monsanto Technology, LLC (collectively, "Monsanto"). The district court concluded that there was no justiciable case or controversy and dismissed for lack of jurisdiction. Because Monsanto has made binding assurances that it will not "take legal action against growers whose crops might inadvertently contain traces of Monsanto biotech genes (because, for example, some transgenic seed or pollen blew onto the grower's land)," Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5, *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012) (No. 11-CV-2163), ECF No. 20, and appellants have not alleged any circumstances placing them beyond the scope of those assurances, we agree that there is no justiciable case or controversy. We affirm.

## BACKGROUND

The twenty-three patents-in-suit[1] relate to technologies for genetically modifying seeds. The patented tech-

———————

[1] The appellants have challenged the following Monsanto patents: U.S. Patent Nos. 5,322,938 ("DNA sequence for enhancing the efficiency of transcription"); 5,352,605 ("Chimeric genes for transforming plant cells using viral promoters"); 5,362,865 ("Enhanced expression

nologies are used to incorporate various traits into soybeans, corn, and other agricultural crops, including traits conferring resistance to the herbicide glyphosate (the active ingredient in Monsanto's product Roundup). *See generally Bowman v. Monsanto Co.*, 569 U.S. ___, 133 S.Ct. 1761 (2013); *Monsanto Co. v. McFarling*, 363 F.3d 1336 (Fed. Cir. 2004). Such seeds are known as "Roundup Ready." Farmers using Monsanto's Roundup Ready glyphosate-resistant seeds are able to eliminate weeds by spraying glyphosate over the tops of their crops, a practice that would kill non-genetically modified, or "convention-

in plants using non-translated leader sequences"); 5,378,619 ("Promoter for transgenic plants"); 5,424,412 ("Enhanced expression in plants"); 5,463,175 ("Glyphosate tolerant plants"); 5,530,196 ("Chimeric genes for transforming plant cells using viral promoters"); 5,554,798 ("Fertile glyphosate-resistant transgenic corn plants"); 5,593,874 ("Enhanced expression in plants"); 5,641,876 ("Rice actin gene and promoter"); 5,659,122 ("Enhanced expression in plants using non-translated leader sequences"); 5,717,084 ("Chimaeric gene coding for a transit peptide and a heterologous peptide"); 5,728,925 ("Chimaeric gene coding for a transit peptide and a heterologous polypeptide"); 5,750,871 ("Transformation and foreign gene expression in *Brassica* species"); 5,859,347 ("Enhanced expression in plants"); 6,025,545 ("Methods and compositions for the production of stably transformed, fertile monocot plants and cells thereof"); 6,040,497 ("Glyphosate resistant maize lines"); 6,051,753 ("Figwort mosaic virus promoter and uses"); 6,083,878 ("Use of N-(phosphonomethyl) glycine and derivatives thereof"); 6,753,463 ("Transformed cotton plants"); 6,825,400 ("Corn plants comprising event PV-ZMGT32(nk603)"); RE38,825 ("Glyphosate tolerant plants"); and RE39,247 ("Glyphosate-tolerant 5-enolpyruvylshikimate-3-phosphate synthases").

al," seeds. *See Bowman*, 569 U.S. at ___, 133 S. Ct. at 1765–67; *McFarling*, 363 F.3d at 1338–39.

Monsanto sells seed and licenses others to grow and sell seed, pursuant to a limited-use license (the "Technology Agreement") permitting growers to plant, harvest, and sell a single generation of genetically modified seeds. It is undisputed that Monsanto has enforced its patent rights against farmers who planted Monsanto's genetically modified seeds without authorization, *see, e.g.*, *Monsanto Co. v. Bowman*, 657 F.3d 1341 (Fed. Cir. 2011), *aff'd Bowman*, 569 U.S. ___, 133 S. Ct. 1761; *Monsanto Co. v. Scruggs*, 459 F.3d 1328 (Fed. Cir. 2006), or who replanted saved seeds in violation of the Technology Agreement, *see, e.g.*, *McFarling*, 363 F.3d at 1352. Between 1997 and 2010, Monsanto brought some 144 infringement suits for unauthorized use of its seed. Approximately 700 other cases were settled without litigation.

The appellants are growers, seed selling businesses, and agricultural organizations, all of whom grow, use, or sell conventional seeds, and many of whom have organic certification. The appellants "do not want to use or sell transgenic seed" incorporating Monsanto's technologies. First Amended Complaint ("Am. Compl.") ¶ 2, *Organic Seed Growers*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012) (No. 11-CV-2163), ECF No. 3. They also oppose the use of glyphosate and do not use it on their crops. They are concerned, however, that

> if they do indeed become contaminated by transgenic seed, which may very well be inevitable given the proliferation of transgenic seed today, they could quite perversely also be accused of patent infringement by the company responsible for the transgenic seed that contaminates them.

*Id.*

On March 29, 2011, the appellants brought suit against Monsanto in the Southern District of New York, seeking declaratory judgments that the patents-in-suit are invalid, unenforceable, and not infringed. *Organic Seed Growers*, 851 F. Supp. 2d at 549. The appellants alleged that they have been forced to "forgo growing [conventional] corn, cotton, canola, sugar beets, soybeans, and alfalfa, since it is widely known that those crops are currently under severe threat of transgenic seed contamination." Am. Compl. ¶ 96; *see also id.* at ¶ 104 (alleging that "over 85-90% of all soybeans, corn, cotton, sugar beets, and canola grown in the U.S. contains Monsanto's patented genes"). They further alleged that they must take costly precautions to avoid contamination, such as testing seeds for transgenic traits and creating "buffer" zones between their farms and those of neighbors growing modified crops. Am. Compl. ¶ 108. The appellants contended that if they do not take these precautions, their crops would be contaminated, and they would be sued for infringement by Monsanto. At least one appellant declared that the fear of suit by Monsanto is the sole reason he refrained from cultivating organic corn and soybeans, and that he would resume growing those crops if that threat were eliminated. *See* Decl. of Bryce Stephens*, Organic Seed Growers*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012) (No. 11-CV-2163), ECF No. 41.

On April 18, 2011, the appellants asked Monsanto to "'expressly waive any claim for patent infringement [Monsanto] may ever have against [appellants] and memorialize that waiver by providing a written covenant not to sue.'" *Organic Seed Growers*, 851 F. Supp. 2d at 549 (quoting Am. Compl. Ex. 3 (Apr. 18, 2011, letter from appellants' counsel to Monsanto's counsel)). The appellants stated that without such a covenant, they would "'feel they would be at risk of having Monsanto assert claims of patent infringement against them should they ever become contaminated by transgenic seed potentially

covered by Monsanto's patents.'" *Id.* at 549–50 (quoting Am. Compl. Ex. 3). Monsanto refused their request and referred the appellants to a statement posted on its website, which reads in relevant part:

> It has never been, nor will it be Monsanto policy to exercise its patent rights where trace amounts of our patented seeds or traits are present in farmer's fields as a result of inadvertent means.

J.A. 508 ("Monsanto's Commitment: Farmers and Patents").[2] Through counsel, Monsanto assured the appellants that

> Monsanto is unaware of any circumstances that would give rise to any claim for patent infringement or any lawsuit against your clients. Monsanto therefore does not assert and has no intention of asserting patent-infringement claims against your clients. You represent that "none of your clients intend to possess, use or sell any transgenic seed, including any transgenic seed potentially covered by Monsanto's patents." Taking your representation as true, any fear of suit or other action is unreasonable, and any decision not to grow certain crops unjustified.

Am. Compl. Ex. 4 (alteration omitted) (Apr. 28, 2011, letter from Monsanto's counsel to appellants' counsel). According to Monsanto, a covenant not to sue is unnecessary because it would not have an incentive to bring suit in the first place because it could not collect significant damages for low levels of inadvertent infringement.

---

[2]    The full statement is available at the following website:

http://www.monsanto.com/newsviews/Pages/comm itment-farmers-patents.aspx.

The district court concluded that "these circumstances do not amount to a substantial controversy and . . . there has been no injury traceable to defendants," and granted Monsanto's motion to dismiss for lack of subject matter jurisdiction. *Organic Seed Growers*, 851 F. Supp. 2d at 556. The appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1). We review the district court's determination that it lacks subject matter jurisdiction de novo. *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1356 (Fed. Cir. 2013).

## DISCUSSION

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The declaratory judgment plaintiff bears the burden of showing the existence of an "actual controversy," *see Arris Grp., Inc. v. British Telecommc'ns PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011), that is, "any controversy over which there is Article III jurisdiction," *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008), *cert. denied*, 555 U.S. 1170 (2009) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). As the Supreme Court explained in *MedImmune, Inc. v. Genentech, Inc.*, "'[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

"In determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case." *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012). Although there is no bright-line rule applicable to patent cases, we have held that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). A reasonable apprehension of suit is not necessary. *Id.* However, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement." *Id.* Thus, the question in this case is not whether the appellants' subjective fear of suit by Monsanto is genuine, but whether they have demonstrated a "'substantial risk' that the harm will occur, which may prompt [them] to reasonably incur costs to mitigate or avoid that harm." *See Clapper v. Amnesty Int'l USA*, 568 U.S. ___, ___, 133 S.Ct. 1138, 1150 n.5 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. ___, ___, 130 S.Ct. 2743, 2754–55 (2010)).

The appellants concede that Monsanto has never specifically alleged that they infringe its patents, nor threatened suit against them. Nevertheless, the appellants contend that in light of Monsanto's evident history of aggressive assertion of its transgenic seed patents against other growers and sellers (144 suits and 700 settlements), they must assume that if they infringe those patents, they will also be sued—even if they only infringe inadvertently. Am. Compl. ¶ 130. The appellants urge that this suffices for declaratory judgment jurisdiction. *See, e.g.*, *Arkema*, 706 F.3d at 1357 (holding that it is not "necessary that a patent holder make specific accusations" of infringement against the declaratory judgment plaintiff);

*Micron Tech, Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (patentee's suits against other manufacturers supported declaratory judgment jurisdiction); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy."); *see also Holder v. Humanitarian Law Project*, 561 U.S. ___, 130 S.Ct 2705, 2717 (2010) (holding that plaintiffs had standing where similarly situated parties had been prosecuted under the same statute).[3]

Monsanto here claims that it has not previously sued "inadvertent infringers," and that the appellants are therefore not similarly situated to those who have been sued. But Monsanto at oral argument made clear that its view of what constitutes an "inadvertent infringer" is quite narrow, excluding those growers whose crops become accidentally contaminated, and who do not treat their fields with Roundup, but who, knowing of the contamination, harvest and replant or sell the seeds.

There is, moreover, a substantial risk that at least some of the appellants could be liable for infringement if they harvested and replanted or sold contaminated seed. Even though the Supreme Court has not addressed the question, the Court's recent decision in *Bowman v. Monsanto Co.* leaves open the possibility that merely permitting transgenic seeds inadvertently introduced into one's land to grow would not be an infringing use.[4] *Bowman,*

---

[3]    To be sure, an amorphous, "'widespread understanding'" of a risk of suit is not sufficient. *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1323 (Fed. Cir. 2012).

[4]    In *Bowman*, the Supreme Court held that patent exhaustion did not permit a farmer to reproduce Monsanto's transgenic seeds without a license. *Bowman*, 569

569 U.S. at ___, 133 S.Ct. at 1769 (recognizing that the Court's holding does not extend to a case in which "the article's self-replication might occur outside the purchaser's control"). However, our cases suggest that one who, within the meaning of the Patent Act, uses (replants) or sells even very small quantities of patented transgenic seeds without authorization may infringe any patents covering those seeds. In *SmithKline Beecham Corp. v. Apotex Corp.*, we rejected the proposition that patent claims should be construed to avoid reading on "trace amounts" of a patented compound, even though that compound's self-replicating properties might "place potential infringers in the untenable position of never knowing whether their product infringes because even a single undetectable [molecule] would infringe." 403 F.3d 1331, 1336, 1339–40 (Fed. Cir. 2005); *see also Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1299 (Fed. Cir. 2009) (noting that de minimis infringement can still be infringement);

---

U.S. at ___, 133 S.Ct. at 1769. Bowman, a soybean farmer, conceded that he had deliberately purchased, harvested, and replanted Roundup Ready soybeans without a license. *Id.* at 1765–67. He also used glyphosate on his fields, thereby favoring the survival of transgenic soybeans and eliminating conventional soybeans. *Id.* The Court carefully distinguished Bowman's use of the patented soybean seeds from the situation of inadvertent infringement:

> Bowman was not a passive observer of his soybeans' multiplication; or put another way, the seeds he purchased (miraculous though they might be in other respects) did not spontaneously create eight successive soybean crops. . . . In another case, the [seed]'s self-replication might occur outside the [farmer's] control.

*Id.* at 1769.

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1352–53 (Fed. Cir. 2000) (Rader, J., concurring) ("[T]his court has not tolerated the notion that a little infringement—de minimis infringement—is acceptable infringement or not infringement at all."). Both parties seem to concede that at a minimum, using or selling patented seeds without a license is potentially infringing activity. For purposes of this appeal, we will assume (without deciding) that using or selling windblown seeds would infringe any patents covering those seeds, regardless of whether the alleged infringer intended to benefit from the patented technologies.[5]

While appellants do not allege that they have detected contamination in their crops, the district court held that it is likely inevitable that conventional crops will be contaminated by trace amounts of windblown pollen or seeds from genetically modified crops or other sources. *Organic Seed Growers*, 851 F. Supp. 2d at 548. Monsanto acknowledges that conventional crops could be exposed to "cross-pollination from nearby fields where biotech crops are grown," Appellees' Br. 6, and that they "might inadvertently contain traces of Monsanto biotech genes (because, for example, some transgenic seed or pollen blew onto the grower's land)," Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5, *Organic Seed Growers*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012) (No. 11-CV-2163), ECF No. 20; *see also* J.A. 513 (Tobin Decl.) (acknowledging that contami-

---

[5] Appellants nonetheless contend on the merits that they cannot be liable for infringement because they do not purposefully use or sell Monsanto's transgenic seed and would do so only inadvertently. Am. Compl. ¶ 5. Declaratory judgment plaintiffs' refusal to concede infringement does not, of course, defeat jurisdiction. *See Arrowhead Indus. Water, Inc. v. Echolochem, Inc.*, 846 F.2d 731, 738 (Fed. Cir. 1988).

nation could result in "Monsanto's patented traits ap-pear[ing] inadvertently" in a conventional farmer's fields).

The record indicates that about one half of domestic cropland is sown with genetically modified crop varieties, and that some crops are ninety percent sown with Monsanto's genetically modified seed. An amicus cites a study finding that, despite stringent precautionary measures meant to prevent any commingling of modified and conventional seed crops, a large majority of conventional seed samples have become contaminated by Monsanto's Roundup resistance trait. *See* J.A. 638–43. At least one of the appellants received, and rejected, multiple shipments of contaminated seeds. The district court found that due to contamination,

> some unlicensed—and unintended—use of transgenic seeds is inevitable. Like any other seeds, transgenic seeds may contaminate non-transgenic crops through a variety of means, including seed drift or scatter, crosspollination, and commingling via tainted equipment during harvest or post-harvest activities, processing, transportation, and storage.

*Organic Seed Growers*, 851 F. Supp. 2d at 548. Indeed, the Supreme Court recently recognized that there is a risk of "gene flow" from genetically modified crops into conventional crops. *See Geertson Seed Farms*, 561 U.S. at ___, 130 S.Ct. at 2752–54 (holding that respondent conventional farmers had standing to challenge the administrative deregulation of transgenic seeds). The genetically modified seeds cannot easily be separated from conventional seeds; thus, a grower who harvests and uses or sells contaminated crops risks incurring infringement liability.

Despite this possibility of infringement, the question is whether Monsanto is correct that its representations moot any potential controversy. As the Supreme Court has recognized, a covenant not to sue a declaratory judg-

ment plaintiff can moot a controversy between the parties. In *Already, LLC v. Nike, Inc.*, trademark holder Nike's covenant not to sue the alleged infringer Already defeated declaratory judgment jurisdiction, because "Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone, and, given the breadth of the covenant, cannot be expected to recur." 568 U.S. ___, ___, 133 S.Ct. 721, 732 (2013). Here, although Monsanto has been unwilling to give appellants a covenant not to sue, it contends that it has given them something equally effective: "Monsanto has explicitly stated its commitment not to take legal action against growers whose crops might inadvertently contain traces of Monsanto biotech genes (because, for example, some transgenic seed or pollen blew onto the grower's land)." Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5, *Organic Seed Growers*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012) (No. 11-CV-2163), ECF No. 20. As noted above, Monsanto has published the following statement on its website: "[i]t has never been, nor will it be Monsanto policy to exercise its patent rights where trace amounts of our patented seeds or traits are present in farmer's fields as a result of inadvertent means." *Id.* Monsanto represented to the district court that "[t]his statement is meant to assure growers that Monsanto will not pursue a patent-infringement suit where Monsanto's patented traits appear inadvertently . . . in minimal quantities." *Id.* And Monsanto has maintained throughout this litigation that if the facts are as alleged, it will not sue the appellants:

> Monsanto is unaware of any circumstances that would give rise to any claim for patent infringement or any lawsuit against your clients. Monsanto therefore does not assert and has no intention of asserting patent-infringement claims against your clients. You represent that "none of your clients intend to possess, use or sell any

transgenic seed, including any transgenic seed po-
tentially covered by Monsanto's patents." *Taking
your representation as true, any fear of suit or oth-
er action is unreasonable, and any decision not to
grow certain crops unjustified.*

Am. Compl. Ex. 4 (emphasis added) (alteration omitted)
(Apr. 28, 2011, letter from Monsanto's counsel to appel-
lants' counsel); *see also* Oral Argument at 20:10–20:17
(Monsanto's counsel stating "if the allegations of [their]
complaint are true, [they] have nothing to fear from us");
Appellees' Br. 32 (urging that "in light of Monsanto's
*unambiguous statement* to plaintiff's counsel," there is no
"'real and immediate' controversy" (emphasis added));
Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 11,
*Organic Seed Growers*, 851 F. Supp. 2d 544 (S.D.N.Y.
2012) (No. 11-CV-2163), ECF No. 20 ("Monsanto knows of
no basis to sue Plaintiffs, and has no interest in doing
so.").

Taken together, Monsanto's representations unequiv-
ocally disclaim any intent to sue appellant growers, seed
sellers, or organizations for inadvertently using or selling
"trace amounts" of genetically modified seeds. Monsanto
makes clear that this covers "USDA [United States De-
partment of Agriculture]-certified organic farm or han-
dling operation[s]," Appellees' Br. 6–7, which are
prohibited from using genetically modified seed, *see* 7
C.F.R. § 205.105; J.A. 497–505. While the USDA has not
established an upper limit on the amount of trace contam-
ination that is permissible, the appellants argue, and
Monsanto does not contest, that "trace amounts" must
mean approximately one percent (the level permitted
under various seed and product certification standards).
We conclude that Monsanto has disclaimed any intent to
sue inadvertent users or sellers of seeds that are inad-
vertently contaminated with up to one percent of seeds
carrying Monsanto's patented traits.

While Monsanto's representations are not a covenant not to sue, they have a similar effect. If we rely on Monsanto's representations to defeat the appellants' declaratory judgment claims (as we do), those representations are binding as a matter of judicial estoppel. It is well-established that a party who successfully argues one position is estopped from later adopting a contrary position in a case involving the same patent. *See, e.g.*, *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 596–97 (Fed. Cir. 1995); *see also New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). The main factors warranting judicial estoppel are (1) a party's later position is "clearly inconsistent" with its prior position, (2) the party successfully persuaded a court to accept its prior position, and (3) the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. at 750–51. Should Monsanto sue the appellants for future actions falling within the scope of its representations in this litigation, all three factors would warrant the application of judicial estoppel. As the Supreme Court stated in *Already*, "[the defendant], having taken the position in court that there is no prospect of [infringement by the declaratory plaintiffs], would be hard pressed to assert the contrary down the road." 568 U.S. at ___, 133 S.Ct. at 728 (citing *New Hampshire v. Maine*, 532 U.S. at 749). At oral argument, Monsanto's counsel wisely acknowledged that "if the court writes an opinion that relies on the representations that I made in my letter, in response to their letter, then I think it would be binding as a matter of judicial estoppel." Oral Argument at 17:30–17:51.

One problem with Monsanto's disclaimer, however, is that it has limited scope: it applies only to growers or sellers of "trace" amounts of seed. At oral argument, Monsanto resisted our efforts to clarify whether it would assert its patents against a conventional grower who inadvertently uses or sells *greater* than trace amounts of

modified seed, but who, for example, does not make use of the Roundup Ready trait by spraying the plants with glyphosate. Thus, we cannot conclude that Monsanto has disclaimed any intent to sue a conventional grower who never buys modified seed, but accumulates greater than trace amounts of modified seed by using or selling contaminated seed from his fields.[6]

Nonetheless, the appellants here have not made allegations that they fall outside Monsanto's representations. While at least some of the appellants allege that they will necessarily harvest and use or sell trace amounts of modified seeds, no appellants have alleged that they are engaging in activities that place them outside the scope of Monsanto's disclaimer. There is no allegation that the alleged contamination already exceeds the one percent threshold.[7] Nor have the appellants here taken any

---

[6]    At oral argument, Monsanto's counsel was quite careful never to represent that Monsanto would forgo suit against a grower who harvested and replanted windblown seeds—even if that grower gained no advantage by doing so:

> Q: "So, would it be fair to say, in my hypothetical, that Monsanto would not sue unless the [inadvertently infringing] farmer was using Roundup on his crops?"

> A: "It's never—I don't know if it would be fair to say . . ."

Oral Argument at 30:19–30:33.

[7]    Counsel for the appellants conceded as much at oral argument:

> Q: "So you're saying that you have cases of your clients who are contaminated to an extent greater than one percent?"

concrete steps that would place them outside the scope of Monsanto's binding disclaimer, and at risk of suit for infringement. No plaintiffs have alleged plans to use or sell *greater* than trace amounts of modified seed, such as, for example, plans to selectively harvest and replant or sell contaminated seeds in a manner favoring the reproduction of transgenic seeds. To the contrary, the appellants are "using their best efforts to avoid" contamination. Am. Compl. ¶ 2.

We have held that a declaratory judgment plaintiff must allege "significant, concrete steps to conduct infringing activity." *Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008). In *Arkema v. Honeywell*, for example, the declaratory judgment plaintiff had "concrete plans" to supply a product for concededly infringing uses, had already marketed the product, had responded to supply requests, and wished to enter supply contracts with customers. 706 F.3d at 1357. There are no similar allegations here.

When it is "uncertain when, if ever, the declaratory plaintiff would engage in potentially infringing activity, the dispute [does] not present a case or controversy of sufficient immediacy to support a declaratory judgment." *See Cat Tech*, 528 F.3d at 881 (citing *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346–50 (Fed. Cir. 2007)). As the Supreme Court explained in *Already*, it is "incumbent on [the declaratory judgment plaintiff] to indicate that it engages in or has sufficiently concrete

---

A: "Not in this case, no, but yes, we do have clients."

Q: "But not here."

A: "Right."

Oral Argument at 37:53–38:13.

plans to engage in activities not covered" by a defendant's covenant not to sue. 568 U.S. at ___, 133 S.Ct. at 728. When Already failed to make that showing, the Supreme Court held that there was no Article III case or controversy. *Id.* at 732–33. It follows that there is no case or controversy here.

Finally, the appellants argue that Monsanto's refusal to provide a blanket covenant not to sue has a "chilling effect," forcing the appellants "to forgo farming or seed distribution activities that they otherwise would very much like to pursue." Am. Compl. ¶ 142. Under some circumstances, forgoing activities or taking costly precautions may be reasonable responses to a substantial risk of future harm, and may therefore be cognizable injuries. *See Geertson Seed Farms*, 561 U.S. at ___, 130 S.Ct. at 2754–55. However, "'[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Clapper*, 568 U.S. at ___, 133 S.Ct. at 1152 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)); *see also Prasco*, 537 F.3d at 1338 ("[A] fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy."). Declaratory judgment plaintiffs need not be "literally certain that the harm they identify will come about," but they must show that they are at "'substantial risk'" of that harm, and that costly precautions are a reasonable response. *Clapper*, 568 U.S. at ___, 133 S.Ct. at 1150 n.5 (quoting *Geertson Seed Farms*, 561 U.S. at ___, 130 S. Ct. at 2754–55). The appellants have not made that showing here, because the future harm they allege—that they will grow greater than trace amounts of modified seed, and therefore be sued for infringement by Monsanto—is too speculative to justify their present actions. Parties "cannot manufacture standing merely by inflicting harm on themselves based

on their fears of hypothetical future harm."  568 U.S. at 1151.

The appellants also complain that they are harmed by, *inter alia*, exposure to the allegedly adverse health effects of genetically modified seeds and glyphosate; long-term environmental impacts of genetically modified seeds; economic costs following from contamination of conventional crops by transgenic seeds and glyphosate; and the costs of anti-contamination precautions taken for purposes other than avoiding suit (i.e., to maintain organic certification).  But as the appellants concede, "a declaratory judgment here would do nothing to eliminate the risk of transgenic seed contamination."  Appellants' Reply Br. 14.  Aside from the risk of suit by Monsanto, none of the alleged harms caused by contamination is traceable to Monsanto's enforcement of its patents, they could not be remedied by a declaratory judgment, and they cannot serve as a basis for jurisdiction in this case.

In sum, Monsanto's binding representations remove any risk of suit against the appellants as users or sellers of trace amounts (less than one percent) of modified seed. The appellants have alleged no concrete plans or activities to use or sell greater than trace amounts of modified seed, and accordingly fail to show any risk of suit on that basis. The appellants therefore lack an essential element of standing.  The district court correctly concluded that it lacks Declaratory Judgment Act jurisdiction.

## AFFIRMED

### COSTS

No costs.