Wallach, Circuit Judge,
dissenting.
“If a dispute is not a proper case or controversy” under Article III of the Constitution, we “have no business deciding it.” DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Indeed, “[n]o principle is more fundamental to the judiciary’s proper role in our system of government.” Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (describing the case or controversy check as a “bedrock requirement”). In the absence of a case or controversy, “we must put aside the natural urge to proceed directly to the merits” of an action “and to settle it for the sake of convenience and efficiency.” Raines v. *1373 Byrd, 521 U.S. 811, 820, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (internal quotation marks omitted); see Heine v. Bd. of Levee Comm’rs, 86 U.S. (19 Wall.) 655, 658, 22 L.Ed. 223 (1873) (“[T]he hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from ... precedent and ... administer[ ] ... justice at the expense of well-settled principles”).
The instant dispute returns to the court for a third time from the U.S. District Court for the District of Delaware (“District Court”). In its most recent decision, the District Court denied a motion to dismiss filed by Appellants ArcelorMittal and ArcelorMittal Atlantique et Lorraine (together, “Appellants”) and, instead, granted motions for summary judgment of nonin-fringement and invalidity of claims 24-25 of U.S. Patent No. RE44,153 (“the RE153 patent”) filed by Appellees AK Steel Corporation, Severstal Dearborn, Inc., and Wheeling-Nisshin Inc. (collectively, “Appellees”). ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal VI), 147 F.Supp.3d 232, 239 (D. Del. 2015). In denying Appellants’ Motion to Dismiss, the District Court concluded that Appellants’ covenant not to sue Appellees and their customers for infringement of the RE 153 patent (“the Covenant”) did not moot the dispute between the parties. Id. at 239 & n.17; see J.A. 5220-21 (Covenant). Because the Covenant moots the dispute between the parties and the majority concludes otherwise, I respectfully dissent.[1]
I. Background
The present appeal follows from (1) the District Court’s opinion construing various claims of U.S. Patent No. 6,296,805 (“the ’805 patent”), see ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal I), 755 F.Supp.2d 542, 546-51 (D. Del. 2010); (2) the District Court’s opinion upholding the jury’s verdicts that the subject claims of the ’805 patent were not infringed under the doctrine of equivalents and were invalid as anticipated by the prior art or would have been obvious over the prior art, see ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal II), 811 F.Supp.2d 960, 965-73 (D. Del. 2011); (3) our opinion affirming-in-part on claim construction, reversing-in-part on claim construction and reversing on anticipation, and vacating and remanding for a new trial on literal infringement and obviousness, see ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal III), 700 F.3d 1314, 1319-26 (Fed. Cir. 2012); (4) the District Court’s opinion oh remand invalidating claims 1-25 of the RE 153 patent,[2] see ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal IV), 989 F.Supp.2d 364, 368-72 (D. Del. 2013); and (5) our decision affirming the District Court’s invalidity determination as to claims 1-23 of the RE 153 patent and reversing as to claims 24-25, see ArcelorMittal Fr. v. AK Steel Corp. (ArcelorMittal V), 786 F.3d 885, 888-92 (Fed. Cir. 2015).
After our latest remand to the District Court, Appellants moved to dismiss the action because, in their view, the District Court had invalidated all of the asserted claims of the RE153 patent (i.e., claims 1-2, 5, 7, and 16). J.A. 4943, 4947-59. Appel-lees responded by filing motions for summary judgment of invalidity and nonin-fringement of claims 24-25 of the RE153 patent. J.A. 4960, 4974-83, 4986, 4991-5010. Appellants subsequently filed the Covenant with the District Court, which states that Appellants
*1374 hereby irrevocably covenant not to sue [Appellees] ..., and the customers of [Appellees] ...under [the RE153 patent] ... for any use of the RE 153 [patent and all actions in connection with manufacture and sale of aluminum coated, boron-containing steel sheet products in the United States, including without limitation, making, having made, using, having used, selling, having sold, offering for sale, having offered for sale and importing, or having imported, aluminum coated, boron-containing steel sheet products. To be clear, this covenant not to sue is limited to the RE 153 [p]atent and shall not apply with respect to any patent related to the RE 153 [p]atent, including U.S. Reissued Patent No. RE44,940 [ (“the RE940 patent”) ].[3]
J.A. 5220-21 (emphases added). In the cover letter accompanying the Covenant, Appellants explained that they filed the “executed [C]ovenant” with the District Court “conditioned on [the] resolution of [their] motion to amend [the complaint] in” a separate case (“the 685 case”) to assert the RE940 patent against Appellees and that “this condition is necessary to avoid mooting the 685 case and thereby divesting the [District] Court of jurisdiction.” J.A. 5218. Appellants stated further that they “stand[] ready to deliver the [C]ovenant unconditionally upon resolution of that motion.” J.A. 5218.
The District Court ultimately denied Appellants’ Motion to Dismiss and granted Appellees’ summary judgment motions. ArcelorMittal VI, 147 F.Supp.3d at 239. Regarding the Covenant, the District Court observed that (1) Appellants “could have avoided the entry of [summary] judgment” had they “simply filed the [Covenant instead of making it conditional,” id. at 239 n.17, and (2) the entry of summary judgment “moot[ed]” the Covenant, id. at 239.
II. The Covenant Moots the Action
The threshold issue before .us concerns the scope and effect of the Covenant. Because I conclude that the Covenant moots the dispute before us, I add to the applicable standards articulated by the majority and provide reasons for my disagreement.
A. Choice of Law and Standard of Review
“[(Questions of the district court’s jurisdiction” over a dispute concerning patent infringement and validity “are always determined under Federal Circuit law.” Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1202 (Fed. Cir. 2005) (addressing, inter alia, mootness in an appeal concerning patent infringement and validity). Our law applies “because the jurisdictional issue is intimately involved with the substance of the patent laws,” Avocent Huntsville Corp. v. Aten Int’l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation marks and citation omitted), and “the development of the [substance of the] patent law[s] ... falls within the exclusive subject matter responsibility of this court,” Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1371 (Fed. Cir. 1994) (internal quotation marks and citation omitted). We review the denial “of a motion to dismiss for lack of subject matter jurisdiction de novo” and “factual findings underlying the jurisdiction determination for clear error.” Microsoft Corp. v. GeoTag, Inc., 817 F.3d 1305, 1311 (Fed. Cir. 2016) (internal quotation marks and citation omitted).
*1375 B. No Substantial Controversy of Sufficient Immediacy and Reality Remained for the District Court to Resolve
Appellants argue that the District Court erred by fading to dismiss the action because the Covenant “unconditional[ly]” eliminated “any current or future case or controversy between the parties” as to the RE153 patent and Appellees otherwise failed to demonstrate the existence of a substantial controversy of sufficient immediacy. Appellants’ Br. 30, 30-31 (internal quotation marks and citation omitted). I agree.
1. Legal Framework
The Constitution delegates certain powers across the three branches of the Federal Government and places limits on those powers. See INS v. Chadha, 462 U.S. 919, 951, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (The Constitution “divide[s] the delegated powers of the ... federal government into three defined categories, legislative, execu-tively,] and judicial, to assure ... that each Branch of government ... confinéis] itself to its assigned responsibility.”). Article III of the Constitution discusses the powers granted to the Judicial Branch and, inter alia, “confines the judicial power of federal courts to deciding actual ‘Cases’ or ‘Controversies.’ ” Hollingsworth v. Perry, — U.S. -, 133 S.Ct. 2652, 2661, 186 L.Ed.2d 768 (2013) (quoting U.S. Const, art. Ill, § 2). “To qualify as a case fit for federal-court adjudication, an actual [case or] controversy must be extant at all stages of review, not merely at the time the complaint is filed.” Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks and citation omitted).
The Supreme Court has provided for the application of a particular test to determine whether a claim for declaratory judgment, like Appellees’ noninfringement and invalidity counterclaims, presents a case or controversy sufficient for Article III purposes. A declaratory judgment claim must pertain to “a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (internal quotation marks, citation, and footnote omitted). The “party seeking a declaratory judgment has the burden of establishing” that such a controversy exists. Cardinal Chem. Co. v. Morton Int’l, Inc., 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (citation and footnote omitted).
Because “an intervening circumstance [may] deprive! ] [a party] of a personal stake in the outcome of the law-suit[] at any point during litigation,” Campbell-Ewald Co. v. Gomez, — U.S. -, 136 S.Ct. 663, 669, 193 L.Ed.2d 571 (2016) (internal quotation marks and citation omitted), the mootness doctrine ensures that federal courts operate within their constitutional limits. “A case becomes moot—and therefore no. longer a Case or Controversy for purposes of Article III— when the issues presented are no longer live or the parties lack a legally recognizable interest in the outcome.” Already, LLC v. Nike, Inc., 568 U.S. 85, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (internal quotation marks and citation omitted). In other words, “[a] case becomes moot ... only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.” Campbell-Ewald, 136 S.Ct. at 669 (internal quotation marks and citation omitted). If “the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.” Id. (internal quotation marks and citation omitted).
*1376 2. The Mootness Doctrine Applies Here
The Covenant moots the instant action because it leaves no live controversy for judicial resolution. To determine the breadth of a covenant, we look to its terms. See Already, 133 S.Ct. at 727-28 (“[W]e begin our analysis with the terms of the covenant.”). The Covenant “irrevocably” prohibits Appellants from suing Appellees “and the[ir] customers” for (1) “any use” of the RE 153 patent and (2) “all actions in connection with [the] manufacture and sale” of products based on the RE153 patent. J.A. 5220-21 (emphasis added). The Covenant applies to all actions and products based on the RE 153 patent, regardless of the timing of those actions and products. See J.A. 5220-21 (including present progressive and present perfect tenses of “make,” “have,” “use,” “sell,” and “import”); see also Oral Argument at 4:35-5:17, http://oralarguments.cafc.uscourts. gov/default.aspx?fl=2016-1357.mp3 (confirming that the Covenant applies to future actions based on the RE153 patent). Contrary to the District Court’s conclusion and Appellees’ arguments, see ArcelorMittal VI, 147 F.Supp.3d at 236, 239 n.17; Appellees’ Br. 46-50 (arguing that the Covenant is conditional), the Covenant does not require the satisfaction of a condition precedent to take effect, see J.A. 5220-21. The appropriate representatives signed and dated the Covenant before Appellants submitted it to the District Court. J.A. 5221-22. Thus, the Covenant’s terms extinguished any substantial controversy of sufficient immediacy between the parties concerning the RE 153 patent, the only patent at issue in the instant action. See MedImmune, 549 U.S. at 127, 127 S.Ct. 764; see also Already, 133 S.Ct. at 732 (“Already’s only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone,” thus mooting the action.). And without a live issue to resolve as to the RE153 patent, the District Court could not grant any effectual relief to Appellees. See Campbell-Ewald, 136 S.Ct. at 669.
The majority does not dispute that under Supreme Court precedent our analysis must begin with the Covenant’s terms. See Maj. Op. 1369-72. Nevertheless, instead of beginning its analysis with those terms, the majority weighs the totality of the circumstances. See id. The majority states that governing law permits it to conduct a review of the totality of the circumstances, citing Prasco, LLC v. Medicis Pharmaceutical Corp. Id. at 1369-70 (citing 537 F.3d 1329, 1336 (Fed. Cir. 2008)). Prasco states that, although the totality of the circumstances “standard can be analyzed directly, the Supreme Court has also developed various more specific but overlapping doctrines rooted in the same Article III inquiry, which must be met for a controversy to be justiciable, including standing, ripeness, and a lack of mootness.” 537 F.3d at 1336 (emphases added) (citations omitted). Prasco states further that, because “satisfying these doctrines represents the absolute constitutional minimum for a justiciable controversy, they can be a helpful guide in applying the all-the-circumstances test.” Id. (emphasis added) (citation omitted). As a consequence, I do not follow the majority’s approach and, instead, follow the more-specific mootness test articulated by the Supreme Court in Already. Indeed, the application here of the test articulated in Already (rather than the more general test articulated in Medlmmune and adopted by the majority) is particularly appropriate because Already, like the appeal before us, involved a declaratory judgment claim. See 133 S.Ct. at 726.
In any event, I disagree with the majority’s analysis of the totality of the circumstances. The majority first determines that “[a]t no time before the [District Court] entered summary judgment did [Appel *1377 lants] unconditionally assure [Appellees] and their customers that it would never assert” claims 24-25 of the RE153 patent “against them.” Maj. Op. 1370. The majority proceeds to describe the series of events leading to Appellants’ filing of the Covenant and to fault Appellants for not filing the Covenant sooner than they did. See id. at 1370-71; see also id. at 1371 (“This outcome results from events that were entirely within [Appellants’] control.”). Neither the procedural history predating the filing of the Covenant nor our perceptions as to Appellants’ timing can overcome the maxim that an action may become moot “at any point during litigation.” Campbell-Ewald, 136 S.Ct. at 669 (internal quotation marks and citation omitted).
The majority next determines that “the [cover] letter and executed [Covenant ... were also qualified.” Maj. Op. 1371. In reaching that conclusion, however, the majority does not assess the Covenant’s terms. See id. Instead, the majority relies only upon the terms of the cover letter. See id. (citing J.A. 5218). An analysis of the Covenant’s terms reveals that it contains no conditional terms, as the majority concedes. See id. at 4 (describing the Covenant as “facially unconditional”). Although Appellants conditionally tendered the Covenant to the District Court, the Covenant itself contained no conditions precedent and was fully executed. See J.A. 5218 (where, in a cover letter accompanying the “executed [C]ovenant,” Appellants conditionally tendered the Covenant to the District Court), 5220-21 (where the executed Covenant contained no conditions).
In discerning a covenant’s scope and effect, we rely on its terms, not evidence extrinsic to the stipulation such as terms in an accompanying cover letter. See Already, 133 S.Ct. at 728. Covenants not to sue may come in many different forms, though all have the same effect of mooting the litigation so long as their terms extinguish all remaining substantial controversies. See, e.g., Organic Seed Growers & Trade Ass’n v. Monsanto Co., 718 F.3d 1350, 1357-61 (Fed. Cir. 2013) (equating a party’s representations to a covenant not to sue and mooting the action, despite the party not reducing the statements to writing); King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1282-83 (Fed. Cir. 2010) (finding that “broad and unrestricted” written covenants not to sue “remove[d] any case or controversy that may have existed between the parties at one point”); Dow Jones & Co. v. Ablaise Ltd., 606 F.3d 1338, 1345-49 (Fed. Cir. 2010) (finding that a proposed, rather than fully executed, covenant mooted the action); Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058-60 (Fed. Cir. 1995) (finding that a covenant not to sue, which counsel signed and included in motion papers, mooted the action because no “present activity” placed a party at risk of an infringement suit), abrogated on other grounds by MedImmune, 549 U.S. 118, 127 S.Ct. 764. When as here a covenant’s terms are unambiguous, we may not interpret those terms using extrinsic evidence, such as a cover letter.[4] See, e.g., Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (en banc) (explaining that a party “cannot rely on extrinsic evidence” to interpret a phrase in a manner that “contradictfc] the plain language of’ a con *1378 tract); see also Restatement (Second) of Contracts § 285 (Am. Law Inst. 1981) (describing a covenant not to sue as a “contract”).[5]
Even if the cover letter is relevant here, I find the majority’s analysis of its terms unpersuásive. The majority regards as dis-positive Appellants’ statement in the cover letter that it had conditionally tendered the Covenant to the District Court. See Maj. Op. 1368, 1370-71. That position has two problems. First, the majority ignores the statement in the cover letter that the Covenant is “executed” and fails to explain why it has elevated one aspect of the cover letter over another. See id.; see also J.A. 5218 (explaining that Appellants “provide[d] a copy of the executed [Cjovenant with” the cover letter). We do not construe a covenant not to sue in a manner that fails “to harmonize and give reasonable meaning to all of its parts.” NVT Techs., 370 F.3d at 1159 (citation omitted). Second, and perhaps more importantly, Appellants’ description in the cover letter of the manner in which they delivered the Covenant to the District Court (i.e., conditionally) does not inform the effect of the Covenant itself. Because the relevant terms of the cover letter and Covenant state that the Covenant was “executed” and applied to “all actions” related to the RE 153 patent, J.A. 5218, 5221, it extinguished all live disputes between the parties as to that patent, irrespective of how Appellants ultimately decided to submit the Covenant. See Organic Seed Growers, 718 F.3d at 1357-61 (equating a party’s representations to a covenant not to sue and mooting the action, despite the party not reducing the statements to writing).
In the end, the majority treats as dis-positive Appellants’ characterization of the manner in which they submitted the Covenant to the District Court. See Maj. Op. 1370-72. That approach elevates a procedural gimmick over substance and permits a party to dictate whether a case has become moot. Precedent demands that we independently examine mootness, cf. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (“[Ejvery federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction, ... even though the parties are prepared to concede it.” (internal quotation marks and citation omitted)), and that we do so by assessing the relevant terms of a covenant not to sue, see Already, 133 S.Ct. at 727-28. For the reasons provided above, I conclude that the Covenant, even when read together with the cover letter, extinguished all live disputes between the parties.
3. The Voluntary Cessation Exception Does Not Apply Here
The analysis here cannot end by finding the action moot. An exception to the mootness doctrine—the voluntary cessation doctrine—addresses situations in which a federal court retains jurisdiction over a matter despite the apparent end of any live case or controversy. According to that doctrine, a party “cannot automatically moot a case simply by ending its unlawful conduct once sued” because, if permitted to do so, the party “could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends.” Already, 133 S.Ct. at 727 (citation omitted). For that reason, “maneuvers designed to insulate” conduct from judicial review “must be viewed with a critical eye.” Knox v. Serv. Emps. Int’l Union, Local 1000, 567 U.S. 298, 132 S.Ct. 2277, 2287, 183 L.Ed.2d 281 (2012). To demonstrate that its new posi *1379 tion moots the action, Appellants “bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citation omitted).
The scope of the Covenant meets the burden imposed by the voluntary cessation test. The Covenant is .unconditional and irrevocable. J.A. 5220-21. It not only prohibits suit against Appellees for their activities and products—past, present, and future—based on the RE 153 patent, it also protects their customers from suit for the same. J.A. 5221. Moreover, Appellants’ stipulation means that judicial estoppel will prevent them from later changing their position on the matters covered by the Covenant. See, e.g., Organic Seed Growers, 718 F.3d at 1358-59. Thus, Appellants could not reasonably be expected to sue Appellees anew for their activities and products related to the RE 153 patent. See, e.g., Friends of the Earth, 528 U.S. at 190, 120 S.Ct. 693.
Because Appellants demonstrate that the Covenant “encompasses all of [the] allegedly unlawful conduct” related to the RE153 patent, the burden shifts to Appel-lees “to indicate that [they] engage[ ] in or ha[ve] sufficiently concrete plans to engage in activities not covered by the [Covenant.” Already, 133 S.Ct. at 728. Appellees have not met that burden. At no point before the District Court did Appellees allege that they had such plans, see J.A. 5047-69 (Appellees’ Brief in Opposition to Appellants’ Motion to Dismiss), 5246-55 (Hearing Transcript), and their brief on appeal does not include any such allegations, see generally Appellees’ Br. That Appellants sued Appellees in the past for conduct related to the RE 153 patent cannot provide the requisite evidence to overcome mootness. See Already, 133 S.Ct. at 730 (explaining that past litigation between the parties does not provide a live case or controversy sufficient to maintain the subject action). Without more, Appellees have failed to demonstrate that they harbor a reasonable expectation of additional litigation related to the RE 153 patent. See id. at 729 (“Given the covenant’s broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur.”); cf. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1298-1300 (Fed. Cir. 2009) (holding that a district court retained jurisdiction where a party provided affirmative evidence that it had concrete plans to engage in conduct not covered by a covenant not to sue).
4. Appellees’ Remaining Arguments Fail
Appellees’ remaining arguments do not persuade me to find that an actual case or controversy remained for the District Court to resolve. First, Appellees contend that we should not address jurisdiction because Appellants failed to raise certain arguments before the District Court, see Appellees’ Br. 43-46, but federal courts must ensure that an actual case or controversy endures throughout “all stages of review, not merely at the time the complaint is filed,” Arizonans, 520 U.S. at 67, 117 S.Ct. 1055 (internal quotation marks and citation omitted).
Second, Appellees contend that the District Court had resolved “the merits of [the] infringement claims” by the time Appellants proffered the Covenant, such that Fort James Corp. v. Solo Cup Co. barred the District Court from dismissing the action as moot. Appellees’ Br. 53 (discussing 412 F.3d 1340 (Fed. Cir. 2005)). In Fort James, we held that a covenant not to sue executed after a jury rendered its verdict *1380 had no effect. See 412 F.3d at 1348. The subject action does not fall within the exception articulated in Fort James because the District Court did not enter its nonin-fringement summary judgment until after Appellants executed the Covenant. Compare ArcelorMittal VI, 147 F.Supp.3d at 232 (where the District Court issued the opinion on December 4, 2015), with J.A. 5222 (where the final signatories signed the Covenant on November 12, 2015).
Third, Appellees argue that our holding in ArcelorMittal III bars enforcement of the Covenant. Appellees’ Br. 52-53. Because ArcelorMittal III held that claim 1 of the ’805 patent is not infringed under the doctrine of equivalents and that holding applies with equal force to claims 24-25 of the RE 153 patent, Appellees aver that the Covenant cannot undo our prior decision. See id. In ArcelorMittal III, however, we declined to address whether Ap-pellees infringed claim 1 of the ’805 patent under the doctrine of equivalents. See 700 F.3d at 1318, 1322. We did not address the merits of that finding because Appellants did not challenge it, instead asserting that the issue should be remanded because of incorrect claim constructions. See Corrected Opening Brief of Plaintiffs-Appellants Arcelormittal France and Arcelormittal Atlantique et Lorraine, No. 2011-1638, 2012 WL 561484, at *44 (Fed. Cir. Jan. 9, 2012). Because we do not address “issues not presented on appeal,” Pentax Corp. v. Robison, 135 F.3d 760, 762 (Fed. Cir. 1998) (citation omitted), our decision in Arcelor-Mittal III cannot be construed as having affirmed the jury’s finding of noninfringement under the doctrine of equivalents, particularly when the jury’s noninfringement finding rested on an incorrect construction of a relevant limitation, see Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371, 1383 (Fed. Cir. 2004) (stating that an erroneous instruction on claim interpretation that affects the jury’s verdict on infringement is grounds for a new trial).
Finally, Appellees contend that the Covenant did not extinguish the controversy between the parties because “it did not protect [Appellees]’ indirect customers from claims of infringement under the RE153 patent and did not protect [Appel-lees] against claims of infringement under the related RE940 patent.” Appellees’ Br. 56. However, Appellees have not identified any “indirect customers” against whom Appellants have asserted the RE 153 patent or explained how such a suit would provide them with a reasonable expectation of further litigation based on the RE153 patent. See id. at 56-57. Moreover, Appellees do not explain how Appellants’ suit against them based on the RE9W patent (i.e., the 685 case) provides them with a reasonable expectation of further litigation on the RE 153 patent, particularly after Appellants executed the Covenant. See Appellees’ Br. 57-58. Thus, Appellees’ “speculation does not give rise to the sort of concrete and actual” controversy needed to comport with Article III of the Constitution. Already, 133 S.Ct. at 730 (internal quotation marks and citation omitted).
III. Conclusion
Because the Covenant made it “absolutely clear” that Appellants would not pursue further any infringement claims against Appellees based on the RE 153 patent, Friends of the Earth, 528 U.S. at 190, 120 S.Ct. 693, no case or controversy remained for the District Court to resolve. Without a live “personal interest” to satisfy the Article III case or controversy requirement, Arizonans, 520 U.S. at 68 n.22, 117 S.Ct. 1055 (internal quotation marks and citation omitted), the dispute before the District Court became moot. With the *1381 dispute before the District Court rendered moot, I would “set aside the decree below and ... remand the cause with directions to dismiss.” Duke Power Co. v. Greenwood Cty., 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936).

. I take no position on the majority's resolution of the merits. See Maj. Op. 1368-69, 1372.

. The RE153 patent issued after the U.S. Patent and Trademark Office ("USPTO”) granted Appellants' application to reissue the '805 patent as the RE153 patent.

3. Between ArcelorMittal TV and ArcelorMittal V, the USPTO granted Appellants' continuation of the application to reissue the '805 patent as the RE940 patent.

. The majority states that "contract law principles ... permit us to look outside the terms of the [C]ovenant itself.” Maj. Op. 1371 n.2. Although under certain circumstances that is correct as a general matter, that position overlooks the precepts that "[cjontract interpretation begins with the language of the written agreement,” NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citation omitted), and that extrinsic evidence cannot supplant a contract's unambiguous terms, see City of Tacoma v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994).

. I rely upon general rules of contract interpretation because the Covenant does not specify which law governs the interpretation of its terms. See J.A. 5218-22.